THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALVIN WILSON, Defendant-Appellant.

First District (2nd Division) No. 82—2979

Opinion filed May 1, 1984.

James J. Doherty, Public Defender, of Chicago (Kathleen M. McGinnis and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Patrick J. Foley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendant Alvin Wilson appeals from his conviction by a jury in the circuit court of Cook County of residential burglary (Ill. Rev. Stat.

1981, ch. 38, par. 19—3(a)) and the 11-year sentence of imprisonment imposed.

Defendant contends that (1) prosecutorial misconduct denied him a fair trial; (2) the court erred in giving the jury a modified version of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.06—3.07 (2d ed. 1981); and (3) the court erred when, in the State's redirect examination of a police officer, it permitted the State to read to him the officer's police report, including a reference to defendant's alleged admission of another, uncharged, crime.

At trial, the occupant of the burglarized apartment, Dr. Patricia Cooper, testified: her apartment, located at 1423 West North Shore in Chicago was twice burglarized; on May 10 and 20, 1982. (Defendant was here convicted of the May 20 burglary.) Missing from her apartment following the second burglary was her stereo, black medical bag and a jar of pennies. In court she identified the stereo and medical bag as her property.

David R. Beleckis testified: he is a cab driver. On May 20, 1982, he was sent by radio to pick up a male "fare" at 6600 North Clark Street. The man told Beleckis "he was going to pick up a stereo set that he had purchased at the location where we were going." The man directed Beleckis to drive to 1423 West North Shore. Beleckis identified defendant as the fare.

Upon arriving at the apartment, defendant entered the apartment and returned carrying stereo equipment. After his third entry into the apartment, a man appeared and identified himself as the manager of the building. The manager stated he was going to call the police. Defendant stated he had a receipt for the stereo. When he could not produce a receipt, defendant "walked off rather rapidly" leaving the stereo and a black bag full of pennies in the cab. At the manager's request, Beleckis attempted to follow the defendant. When they were unsuccessful, the driver drove the building manager to a police station.

Arthur Koegel testified: he is the manager of the apartment building located at 1423 West North Shore. On May 20, 1982, he witnessed a stranger carrying stereo equipment from the building to a taxicab. Koegel asked the man to show a receipt for the stereo. The man could not. While they were talking a key fell from the pocket of the stranger, which bore the legend "Chateau Hotel, 3838 Broadway, room 206." The man then picked up the key and walked away.

On the following day, May 21, Koegel was accompanied by the police to the Chateau Hotel in an effort to identify the man who carried the stereo. Koegel identified defendant in the street near the hotel,

and defendant was then arrested.

Officer Gerald Celan of the Chicago police department testified: he investigated the burglary. When Koegel identified defendant, Celan arrested him. A search revealed a 12-inch screwdriver in defendant's sock. When the officer told defendant he was being arrested for a "burglary up north," defendant responded with "the one on North Shore?" When defendant was placed in the squad car, the officer asked defendant if he remembered Mr. Koegel from the day before, and defendant "nodded his head that he did." At the police station defendant admitted to the May 20 burglary, advising officer Celan that defendant had "seen the stereo" when he was at the apartment "about two weeks earlier."

Defendant testified: he had spent the afternoon of May 20 with acquaintances at the Chateau Hotel, where he lived. He carried the screwdriver found in his possession on May 21 because he was using it to fix a car he had borrowed, and concealed it because he had a prior record for theft. He denied having told the police he committed the burglary. Defendant told the police he did not know Mr. Koegel; he denied being familiar with the north side of Chicago. He also denied ever being at the burglarized apartment.

Defendant was convicted of residential burglary and, after a sentencing hearing, was sentenced to 11 years' imprisonment.

Defendant first argues that various acts of misconduct by the prosecutor deprived him of a fair trial. Defendant contends that the State's discussion of "burden of proof" and "reasonable doubt" in its opening statement was error. There the State told the jury that the State's burden of proof exists "in every criminal case in Cook County" and then drew the following analogy:

> "Now, a reasonable doubt is exactly what it says, a doubt that is reasonable. Now, I have a doubt that China exists. I mean I have never seen the country and I have never been there. But is that a reasonable one? Especially in light of the fact that everything I have heard or read about China, is that a reasonable doubt? Not at all."

At trial defendant failed to object to these statements, nor did he include them in his post-trial motion. Failure to do so has been held to waive their consideration on appellate review. (*People v. Childs* (1981), 101 Ill. App. 3d 374, 428 N.E.2d 185.) While we therefore find them to have been waived, we repeat the admonishments set forth in *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, that the State's continued use of arguments intended to minimize its burden of proof is improper and should be discontinued.

802

■ Defendant next contends the State improperly vouched for the credibility of its witnesses when, in closing argument, the prosecutor—Mary O'Connor—stated that the victim did not "make up" the burglary and that the State's witnesses "were not lying." The State responds that defendant has waived this argument by failing to object at trial or to include it in his post-trial motion. Even if not waived, the State contends, these remarks were a proper reference to the credibility of witnesses and were also invited by defense counsel's own argument.

We agree that defendant's failure to object or to include this argument in his post-trial motion constitutes waiver. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.) But even if it had not been waived, we find the remarks were in fact responses to arguments made by defense counsel and, as such, not improper. Defendant cannot complaint of remarks made by the State in rebuttal which were invited by defense counsel's statements. *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.

■ Defendant next contends that O'Connor's rebuttal argument, wherein she stated "and I am insulted at defense counsel's argument *** [objection overruled] in that he has misstated evidence, lied, appealed to your prejudice and guilt and on every other thing he could do to do his job [objection sustained]," was an improper personal attack on defense counsel.

The State answers that the comments were not improper because (1) they were within the wide latitude afforded in closing argument; (2) they were here true; (3) they were proper attacks on defense counsel's argument and not on defense counsel personally; and (4) even if improper, the remarks should be considered harmless where, as here, the evidence against defendant is overwhelming and the remarks were not so prejudicial as to materially contribute to defendant's conviction.

We cannot agree with the State's suggestion that these comments were directed at counsel's *argument* and not at counsel personally. These attacks "far exceeded the bounds of proper conduct." (*People v. Triplett* (1981), 99 Ill. App. 3d 1077, 1084, 425 N.E.2d 1236.) However, in light of the compelling evidence against defendant, we cannot say these improper comments substantially prejudiced defendant or contributed to his conviction. *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.

■ Defendant next urges error with regard to the State's closing argument wherein O'Connor noted that certain evidence was not brought out because "he [defense counsel] objected. They didn't want

the answers to come out of the questions I asked him. And why was that? Because they don't want you to know the truth." After an objection to these statements was sustained and the court ordered the prosecutor to "argue the facts," she nonetheless persisted and again argued that "the objection to that question was sustained and the officer was not allowed to answer it and I think you ought to consider why."

While these comments could be arguably interpreted to have been made in response to defense counsel's argument that the State had "ignored" physical evidence and fingerprints at the crime scene, we nonetheless find that the State's argument was improper, particularly when repeated after the court's order to refrain from that line of argument. We do not, however, find that they materially contributed to defendant's conviction.

Similarly, defendant alleges error in the State's argument in which the prosecutor attempted to explain to the jury the difficulty in securing fingerprints although no witness had so testified. While we find this contention to have been waived by defendant, it is obvious that the State may not substitute argument for evidence. *People v. Vasquez* (1972), 8 Ill. App. 3d 679, 291 N.E.2d 5.

■ Defendant next complains of the prosecutor's several comments made in rebuttal argument with regard to defendant's alleged failure to present evidence on certain issues which defense counsel had emphasized in his closing argument. We find no error in this instance since a prosecutor may legitimately comment on evidence which is within the defendant's control which would explain or refute evidence presented by the State. (*People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645.) Further, such remarks are proper when, as here, they are made in response to defendant's argument. *People v. Nash* (1980), 90 Ill. App. 3d 612, 413 N.E.2d 16.

■ Defendant's final argument with regard to the State's opening and closing statements concerns the prosecutor's argument to the jury that "But if you want to throw this case out because a police officer didn't write slight mustache in the report then you let him walk out the door and you should all go home and order burglar systems [*sic*] [objection overruled]" and "either [the defendant] is going to walk around with his burglary tools up on the north side of Chicago or you are going to walk around going to your jobs and your houses will be safe."

While we recognize that the State may properly reflect unfavorably on the accused and the evils of crime (*People v. Balls* (1981), 95 Ill. App. 3d 70, 419 N.E.2d 571), we find these remarks, which are

addressed to the juror's fears and suggest future crimes if the jury fails to convict this defendant, to be inappropriate. *People v. Satchell* (1981), 94 Ill. App. 3d 422, 418 N.E.2d 1063; *People v. Jackson* (1980), 84 Ill. App. 3d 172, 405 N.E.2d 448.

■ Defendant's next two assertions of error involve his cross-examination by the State. Defendant contends that his constitutional right to post-arrest silence was violated when the State repeatedly asked him whether he had told the police of his alibi when he was arrested, and was again violated in closing argument when the State argued that defendant "lied" when he testified to being with friends at the time of the burglary.

The State answers that "a prosecutor may comment upon a defendant's post-arrest statements which are inconsistent with defendant's direct testimony at trial."

Because in this case defendant did admit to having some discussions with the police after his arrest, defendant may properly be cross-examined as to his "subsequent failure to tell the police his present contradictory, exculpatory explanation of the incident." (*People v. McFarland* (1981), 93 Ill. App. 3d 136, 416 N.E.2d 769.) While calling a defendant a "liar" in closing argument has been condemned (*People v. Dowd* (1981), 101 Ill. App. 3d 830, 428 N.E.2d 894), it has been held to be not prejudicial when, as here, the comment is based on the evidence and defendant's testimony is in direct conflict with the State's witnesses. (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154.) We believe, however, that the State should avoid this characterization.

■ Defendant next contends that the court erred in allowing the State, during cross-examination of defendant, to ask defendant to state his opinion of the credibility of the State's witnesses. The record demonstrates that O'Connor asked defendant, with regard to each of the State's witnesses, whether the defendant believed the other witnesses' testimony was "error" or they had "lied." And despite the trial court's sustaining of defense counsel's objections to this line of questioning, she persisted. The record reveals that on two occasions O'Connor's conduct during cross-examination moved the court to call a sidebar conference and there condemn the State's actions. We believe this cross-examination, although improper (*People v. Meeks* (1973), 11 Ill. App. 3d 973, 297 N.E.2d 705), in light of the overwhelming evidence against defendant in this case, did not prejudice him.

■ Defendant next contends the court erred when, in giving the jury IPI Criminal No. 3.06-3.07, the court failed to include the mate-

rial encased in brackets below:

> "You have before you evidence that the defendant made statements relating to the offense charged in the information. It is for you to determine [whether the defendant made the statements, and, if so,] what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." (IPI Criminal No. 3.06-3.07 (2d ed. 1981).)

Because the instruction was neither objected to, nor contained in defendant's post-trial motion, we find the issue to have been waived. *People v. Lewis* (1979), 73 Ill. App. 3d 951, 392 N.E.2d 707.

■■■ Defendant's final contention is that the trial court erred in allowing the State, on redirect examination of the arresting officer, to read to him his report and, after each sentence therein, to ask the officer "if he had written that." Defendant asserts this error was compounded because the report made reference to an alleged admission by defendant to an uncharged crime.

The State responds, without citation to authority, "[s]ince *** defendant had attempted to impeach officer Celano with omissions from the police report, the People decided to rehabilitate officer Celano with the same report" and also that "[w]here a conversation is related by a witness the opposing party has a right to bring out all of the conversation."

We conclude that the State's manner of redirect examination was error. Police reports are not generally admissible into evidence; they may, however, be used to refresh the witness' recollection and to impeach a witness. (*People v. Banasik* (1981), 93 Ill. App. 3d 612, 417 N.E.2d 790.) Improper material should not be admitted under the guise of rehabilitation. Nor do we believe that defense counsel's use of the report to impeach the officer "opened the door" so as to allow the State to read the entire report into the record. The principle of allowing an adverse party to complete a conversation does not give the party an automatic right to introduce material which is otherwise inadmissible. (See E. Cleary and M. Graham, Handbook of Illinois Evidence sec. 106.2 (4th ed. 1984).) So also, it was error to read the report's brief and vague reference to defendant's alleged admission to another, uncharged crime. However, in reviewing the entire record, we conclude that this error did not give rise to substantial prejudice to defendant. *People v. Mays* (1979), 74 Ill. App. 3d 145, 392 N.E.2d 106.

■■■ Defendant contends, with regard to the prosecutorial misconduct, that even if the errors which occurred do not individually re-

quire reversal, the cumulative error caused by the prosecutorial misconduct requires a new trial. After a careful review of this record, we cannot conclude that the misconduct here resulted in substantial prejudice to the defendant, or that in their absence the verdict would have been different. (*People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051, *cert. denied* (1982), 455 U.S. 954, 71 L. Ed. 2d 671, 102 S. Ct. 1462.) The State's tactics are, nonetheless, to be condemned. "A consistent and intentional course of prosecutorial misconduct is not condoned simply because a reviewing court concludes that that misconduct has failed to achieve its obvious purpose of denying the defendant a fair trial. Perhaps, *** some reports to the Attorney Registration and Disciplinary Commission are the only antidote to the virulent condition created by the continued use of the type of tactics that were employed in this case." *People v. Starks* (1983), 116 Ill. App. 3d 384, 396, 451 N.E.2d 1298.

For the reasons herein stated, defendant's conviction is affirmed.

Affirmed.

HARTMAN, P.J., and DOWNING, J., concur.