THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARSHALL McNEAL, Defendant-Appellant.

First District (3rd Division)   No. 84—2184

Opinion filed August 26, 1987.

Steven Clark and Sue Augustus, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Thomas V. Gainer, Jr., and James P. Stevenson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial defendant, Marshall McNeal, was found guilty of murder and armed robbery. Defendant was sentenced to natural life imprisonment. This appeal followed.

On appeal, defendant contends that his conviction should be reversed and his natural life sentence should be vacated. Defendant ar-

gues that (1) the trial court's erroneous admission of a hearsay out of court identification of defendant, as well as hearsay statements implicating defendant, denied defendant his right to confront the witnesses testifying against him; (2) the State failed to prove defendant guilty beyond a reasonable doubt of accountability; (3) the prosecutor's comments in his closing argument were so prejudicial as to deny defendant his right to a fair and impartial trial; (4) the defense attorney was so incompetent that his representation resulted in ineffective assistance of counsel; (5) a bailiff had improper communication with the jury and the trial court erred in not granting defendant a continuance to establish that such communication occurred; (6) the mandatory life sentence imposed upon defendant violates the due process of law clause of the eighth and fourteenth amendments of the United States Constitution; and (7) the State exercised peremptory challenges to systematically exclude blacks from the jury. We remand with directions.

On July 9, 1983, Chicago police responded to a call of a "man shot" in the area of 46th and Champlain. Upon arrival, the police found two victims; both had been shot to death and had no identification, money or jewelry on them. Officer Joseph Murphy was assigned to investigate the shootings. On July 13, 1983, Murphy interviewed several witnesses; one of the witnesses was Cynthia Berrian. Murphy testified that during the interview, Berrian indicated that she saw defendant grab one of the victims around the neck and drag him into an alley with the help of another man. Defendant was arrested the following day.

Murphy further testified that when he interviewed defendant on July 14, 1983, he indicated that he knew nothing about the murder and robbery of the two victims. After the interview, Murphy placed the defendant in a lineup which was viewed by Berrian. Murphy then interviewed defendant again and informed defendant that he had been identified "as an offender in the double homicide." Defendant reiterated that he knew nothing about a double homicide.

The following day, defendant talked with Murphy and expressed a desire to tell the truth. Defendant told Murphy that on July 9, 1983, he was met by two of his gang members, known as Big Al and Satan. Big Al and Satan wanted to rob one of the victims, Flagg. When defendant, Big Al and Satan saw Flagg and the other victim, Jordan, Big Al and Satan attempted to rob Flagg and Jordan. When Flagg resisted, defendant grabbed him around the neck and helped Big Al drag him into the alley. Defendant then positioned himself so the victims could not escape. Big Al and Satan robbed both Flagg

and Jordan. Big Al then fired at each victim six times. Big Al, Satan and defendant then ran away, leaving the victims lying on the ground. The next day, defendant met with Big Al and Satan to get his share from the robbery, but Big Al and Satan told the defendant that they had spent all of the money. Defendant subsequently gave a written statement but did not mention grabbing either victim in this statement.

Another officer, Officer O'Connell, interviewed Big Al and Satan. Both gave alibi statements that were corroborated by Satan's mother, Doris Napoleon.

■ Defendant first argues that the trial court erred in admitting both Berrian's out-of-court identification of defendant and her out-of-court statements concerning the murders and robberies at issue here, because Berrian was deceased at the time of trial. Defendant further argues that the out-of-court statements of Big Al and Satan exculpating themselves were inadmissible. It is defendant's position that the identification testimony and statements were hearsay. Therefore, because he could not confront these nontestifying witnesses, he was denied a fair trial.

Hearsay is testimony of an out-of-court statement offered to prove the truth of the matter asserted therein. It is thus dependent for its value upon the credibility of the out-of-court asserter. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226.) An out-of-court statement not offered for the truth of the matter asserted is not hearsay. (*People v. Loggins* (1985), 134 Ill. App. 3d 684, 692, 480 N.E.2d 1293, 1299.) It is the State's contention that Berrian's out-of-court identification and statements, and the exculpatory statements of Big Al and Satan, are not hearsay because they were not offered for the truth of the matter asserted, but instead to illustrate the steps involved in the police investigation of these crimes. We agree.

■ Prior out-of-court statements offered to show that a person did something as a reaction to, or as a result of, an occurrence are not hearsay. Therefore, in a criminal prosecution, it is permissible for a police officer to testify as to prior out-of-court statements about the circumstances of an investigation to detail the steps leading up to a defendant's arrest and indictment. *People v. Price* (1979), 79 Ill. App. 3d 1112, 1119, 398 N.E.2d 1158, 1162; *People v. Bryant* (1984), 123 Ill. App. 3d 266, 275, 462 N.E.2d 780, 786.

Officer Murphy testified that during the course of his investigation, he spoke with Berrian, who indicated that she saw defendant drag one of the victims into an alley by the neck with the help of another person. Shortly thereafter, Berrian heard shots. Based on this

information, Murphy located defendant and arrested him. Murphy also testified that Berrian viewed a lineup and identified defendant.

Officer O'Connell later testified that he interviewed Big Al and Satan as to their whereabouts on the night of the shooting. Both told O'Connell that they were with Satan's mother, Doris Napoleon. O'Connell indicated that Napoleon told him that Big Al and Satan were with her in the "Bonanza" lounge when the shots were fired. Upon hearing the shots, Big Al and Satan ran to the scene. After viewing a showup, Berrian informed O'Connell that she saw Big Al and Satan at the scene but neither was involved. Based on this information, O'Connell testified that neither Big Al nor Satan was arrested.

■ It is our position that the testimony of Murphy and O'Connell was not offered to prove that the substance of their statements was true. With respect to Murphy's testimony, the issue was not whether defendant in fact took someone into the alley by the neck or that because Berrian identified defendant in a lineup he was the actual offender. Rather, we believe that Murphy's testimony was offered to detail the course of an investigation that culminated in the defendant's arrest and indictment. As to Officer O'Connell's testimony, the issue was not whether Big Al and Satan were in fact with Ms. Napoleon when the shooting occurred. O'Connell's testimony simply set forth the course of an investigation that did not culminate in any arrest. Therefore, because this portion of Murphy's and O'Connell's testimony was offered merely to show the reasons for their actions, no inadmissible hearsay existed and defendant was not denied his right to confront any witnesses.

■ Defendant next argues that he was not proven guilty of accountability beyond a reasonable doubt for the murders and robberies of the two victims. We disagree. To prove a defendant guilty of accountability, the State must establish that a defendant: (1) solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) participated in the occurrence either before or during the commission of the offense and (3) participated with the concurrent, specific intent to promote or facilitate the commission of the offense. Ill. Rev. Stat. 1985, ch. 38, par. 5—2; *People v. Soteras* (1987), 153 Ill. App. 3d 449, 454, 505 N.E.2d 1134, 1137.

■ A jury's determination that a defendant is legally accountable for a crime will not be overturned on review unless the evidence is "so improbable, unsatisfactory or unreasonable that a reasonable doubt of defendant's guilt exists." (*People v. Cleveland* (1986), 140

Ill. App. 3d 462, 469, 488 N.E.2d 1276, 1281.) It is only necessary that the evidence, on the whole, convince the trier of fact that a defendant is guilty beyond a reasonable doubt. *People v. Harbold* (1984), 124 Ill. App. 3d 363, 370, 464 N.E.2d 734, 740.

Here, by defendant's own admissions to Officer Murphy, he assisted in the robberies and murders of the two victims. Defendant discussed robbing and murdering the victims with his accomplices. Defendant further stated that he grabbed one of the victims "around the neck and dragged him into the gangway along with the assistance of Big Al." Defendant then positioned himself in the alley so the victims could not escape. Moreover, defendant's written statement indicates that he received scratches on his neck from struggling with one of the victims and that he met with his accomplices the following day to receive his share of the stolen money.

We believe that such evidence amply supports the jury's determination that defendant was accountable for the murders and robberies at issue here. Defendant clearly joined in the actions of his accomplices, who were contemplating illegal acts of a dangerous and homicidal nature. Additionally, although defendant neither fired the fatal shots nor committed the actual robberies, by providing assistance, defendant became criminally liable for any and all of the wrongdoings which were a natural consequence of his accomplices' behavior.

■ We note that defendant insists he did not admit to grabbing the victims or blocking their escape route. Defendant contends that because these statements do not exist explicitly in his written statement, they are not true. However, "the testimony of one witness, if positive and credible, is sufficient to convict, even though it is contradicted by the accused." (*People v. Banks* (1985), 138 Ill. App. 3d 994, 1005, 486 N.E.2d 953, 962.) The jury in this case had the opportunity to observe the demeanor of Officer Murphy and weigh the disputed evidence. We, as the reviewing court, will not substitute our judgment as to the credibility of witnesses, or the weight of disputed evidence, unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. Based upon a thorough review of the record, we believe that sufficient evidence existed to support the jury's determination that defendant is guilty on a theory of accountability.

Defendant also contends that he is entitled to a new trial because of the prosecutor's prejudicial comments in his closing argument. Defendant claims that the prosecutor called him names, such as "Mr. Disciple," "Mr. Streetwise," "Witness Marshall McNeal" and "liar." We find defendant's contentions devoid of any merit.

Our Illinois Supreme Court has held that a prosecutor's comments cannot be labelled improper if those comments are based upon facts in the record or reasonable inferences drawn from those facts. (*People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.) The prosecutor has wide latitude to comment on the evidence presented, the evils of the crime committed and the results that would occur if a defendant were released. *People v. Jennings* (1986), 142 Ill. App. 3d 1014, 1025, 492 N.E.2d 600, 606.

■ In the instant case, the prosecutor's comments were based upon the evidence presented and the inferences drawn therefrom. In defendant's written statement, he readily admits that he is a gang member. The prosecutor's characterization of defendant as a "Disciple" and "Streetwise" can hardly be deemed prejudicial in light of defendant's own admissions. Moreover, the prosecutor's reference to defendant as "Witness Marshall McNeal" was merely a reiteration of defendant's claim that he was a bystander and not involved in the murder and robbery of the two victims.

■ Furthermore, in defendant's first oral statement he stated that he knew nothing of the offenses. Defendant later claimed to be an active participant in another oral statement. Then, in a written statement, defendant claimed not to be an active participant in the crimes. Based upon the many differing statements given by defendant, the prosecutor stated that defendant had to be lying. We do not condone the prosecutor's characterization of defendant as a liar. However, such a characterization is not prejudicial when, as here, it is based on the evidence and defendant's evidence is in direct conflict with the State's evidence. *People v. Wilson* (1984), 123 Ill. App. 3d 798, 463 N.E.2d 890.

Even if this court were to determine that the prosecutor's remarks were improper, the question of whether a new trial is warranted is determined not only by the impropriety of the prosecutor's comments, but also by the quantum of proper evidence presented against defendant. If the evidence against a defendant, on balance, outweighs any alleged or actual improper comment of a prosecutor, the error that exists is considered harmless. (*People v. White* (1985), 134 Ill. App. 3d 262, 277, 479 N.E.2d 1121, 1130-31.) Therefore, even if we were to find that the prosecutor's comments were prejudicial, the evidence against defendant is so overwhelming as to deem any alleged impropriety harmless.

■ Defendant next argues that he is entitled to a new trial because he was denied effective assistance of counsel. Defendant claims that his trial lawyer opened the door for the State to introduce prej-

udicial evidence, failed to object when the State introduced such evidence and failed to object when the State made prejudicial comments. We have reviewed the record and find no evidence to support defendant's argument.

This court stated in *People v. Balfour* (1986), 148 Ill. App. 3d 215, 498 N.E.2d 547, that "[r]epresentation by counsel is constitutionally deficient if the incompetence produced substantial prejudice to the defendant without which the result would probably have been different." (148 Ill. App. 3d 215, 227, 498 N.E.2d 547, 557.) In the absence of such substantial prejudice, we will not take it upon ourselves to second-guess a trial attorney in the heat of battle and say in retrospect what trial strategies should or should not have been utilized. The totality of the circumstances must be considered, not isolated instances that with the benefit of hindsight may have been handled differently. "Effective assistance of counsel refers to competent, not perfect, representation." 148 Ill. App. 3d 215, 227-28, 498 N.E.2d 547, 557.

Our examination of the record reveals that defense counsel acted ably. He made objections which were appropriate, conducted thorough cross-examinations of the State's witnesses and presented a vigorous closing argument. Therefore, under the totality of the circumstances, we conclude that defendant received effective representation.

Defendant next contends that the trial court erred in not granting him a continuance to prove that a bailiff had improper communications with the jury. Defendant requests this court to remand this issue to the trial court for a hearing to determine what, if any, prejudice to the jury occurred from this alleged improper communication.

Our legislature has stated that "all motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(e).) On review, the circumstances of each case must be weighed to determine if the trial court in fact abused its discretion in granting or denying a motion for a continuance. *People v. Lott* (1977), 66 Ill. 2d 290, 297, 362 N.E.2d 312, 315.

The circumstances in this case indicate that immediately after the verdict was read on July 20, 1984, defense counsel spoke with the jurors. During this conversation, defense counsel claimed to have received knowledge of a court bailiff making improper statements to the jury. On August 21, 1984, one month later, defense counsel presented the trial court with an amended motion for a new

trial and an affidavit in which he himself alleged that an improper communication had occurred with the jury. No other affidavits were submitted with the motion. Rather, counsel proceeded on his motion with no affidavits from the jurors and with no explanation as to why he did not exercise due diligence to have those affidavits, after one month's time.

During defendant's post-trial argument, defendant called no witnesses to substantiate his claim that an improper communication had taken place. When the trial judge called the bailiff who allegedly made the statements before the bench and questioned her, defendant did not ask that the bailiff be put under oath nor did defendant request to cross-examine that bailiff. Therefore, based on this record, we believe that the trial judge did not abuse his discretion in denying defendant a continuance.

■■ Defendant next argues that the mandatory life sentence imposed upon him is unconstitutional. The Illinois Supreme Court holding in *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, is dispositive of this issue. In *Taylor*, the supreme court stated:

"We conclude that the legislature considered the possible rehabilitation of an offender, as well as the seriousness of the offense of multiple murders, in determining that in the public interest there must be a mandatory minimum sentence of natural life imprisonment.

\* \* \*

We hold that the provisions \* \* \* for a sentence of natural life imprisonment upon conviction of murdering more than one victim do not \* \* \* violate \* \* \* our constitution." 102 Ill. 2d 201, 206, 209, 464 N.E.2d 1059, 1062, 1064.

We are bound to follow the supreme court's ruling in *Taylor*. Since defendant's argument in this case is the same as the defendant's argument in *Taylor*, we find no merit in defendant's argument.

■■ Defendant's final contention is that the State used its peremptory challenges to systematically exclude blacks from the jury. To support his contention, defendant argues that the State was allowed ten peremptory challenges, and that the State used its first eight to exclude black citizens from the jury.

In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the United States Supreme Court held that a "defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. \* \* \* Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial

by jury is intended to secure." (476 U.S. 79, 86, 90 L. Ed. 2d 69, 80, 106 S. Ct. 1712, 1717.) To this end, a defendant can make a *prima facie* showing of such discrimination based upon a prosecutor's use of peremptory challenges to strike members of a cognizable racial group from the jury venire. The trial court must consider all relevant circumstances in deciding whether a defendant has in fact established a *prima facie* case of systematic racial discrimination. Once a defendant has made a *prima facie* showing, the prosecutor must provide neutral explanations for his challenges. 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.

In *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, the Supreme Court made the *Batson* holding retroactive to apply to State convictions pending on review at the time of the *Batson* decision.

▮▮ Under the circumstances, we remand this case with directions that defendant be allowed to present evidence in the trial court supporting his contention that the State systematically excluded blacks from the jury. If the trial court finds that defendant has established a *prima facie* case of systematic exclusion of blacks from the jury, the State must come forward with neutral explanations for its use of peremptory challenges. If the State does not come forward with neutral explanations, defendant's conviction is vacated and defendant is to receive a new trial. However, if the State presents what is determined by the trial court to be neutral explanations sufficient to rebut defendant's *prima facie* case of racial discrimination, or if the trial court determines that defendant has not established a *prima facie* case, defendant's conviction is affirmed. See *People v. Hooper* (1987), 118 Ill. 2d 244, 506 N.E.2d 1305.

Remanded with directions.

McNAMARA, P.J., and WHITE, J., concur.