THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD FOMOND, Defendant-Appellant.

First District (6th Division)   No. 1—93—1936

Opinion filed June 30, 1995.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and James S. Beligratis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

On November 14, 1990, $2^{1}/_{2}$-year-old Shanika Mosley sustained third-degree burns on both of her hands while allegedly making spaghetti with the defendant, Harold Fomond. A jury convicted the defendant of heinous battery, aggravated battery and aggravated battery of a child. The trial judge sentenced the defendant to 20 years'

imprisonment. The defendant raises five claims of error, but he does not contest the sufficiency of the evidence. We first address the defendant's contention that the judge erred in denying his motion for a new venire. During *voir dire*, the defense counsel asked the judge for a sidebar, during which he orally moved to dismiss the venire. The defense counsel stated that there were only 3 or 4 black members on the 44-person venire. Stating that there were also "other Eurasian people in the voir dire panel," the judge denied the defense counsel's motion. The judge began the proceedings the next day by citing *People v. Peeples* (1993), 155 Ill. 2d 422, 616 N.E.2d 294, in support of his ruling the day before. At this time, the defense counsel complained that the only black jury member was one whom the parties had selected as a potential alternate juror, but the judge did not change his ruling.

There is no written motion for a new venire in the record, although the defendant complains in his post-trial motion that the composition of the venire deprived him of a fair trial. During his argument on his post-trial motion, the defense counsel again claimed that there were only four minority members on the 44-person venire. The judge stated that five members of the venire had appeared to him to be minority members and denied the post-trial motion.

■ We agree with the State that the defendant has waived review of this issue by failing to challenge the venire by a written motion supported by affidavit. See 725 ILCS 5/114—3 (West 1992); *People v. Johnson* (1987), 154 Ill. App. 3d 301, 507 N.E.2d 179 (finding waiver when the defendants did not support their written motions with affidavits); *People v. Flowers* (1985), 132 Ill. App. 3d 939, 478 N.E.2d 524 (holding that the defendant's oral motion challenging the venire was insufficient to preserve the issue for review); *People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263 (holding that an oral challenge to the venire is insufficient).

Even if we were to review the merits of the defendant's claim, we would reject his assertion of error because he failed to establish grounds for relief. To show racial discrimination in the jury selection process, a defendant must present evidence concerning the method by which the jury was selected. (*People v. Stanley* (1993), 246 Ill. App. 3d 393, 615 N.E.2d 1352.) The defendant presented no such evidence, through affidavits or otherwise. The only facts in the record concerning the venire are the defense counsel's comments that only 4 of the 44 members of the venire were black and the judge's observation that he believed there were five minority members on the venire. This evidence is insufficient to show a violation of the fair cross-section requirement. (See *Stanley*, 246 Ill. App. 3d at 398.) For these

reasons, we hold that, although the judge's stated reason for denying the defendant's motion to dismiss the venire is unclear, the judge did not err by denying this motion.

The defendant also maintains that evidence of statements made by Shanika to her mother was erroneously admitted. Neither party called Shanika Mosley to testify at trial. Mary Mosley explained that her daughter, Shanika, was about $2^1/_2$ years old in November 1990, and five years old at the time of trial. On the morning of November 14, 1990, she went to work, leaving Shanika in their apartment with the defendant, who was living with them. The defendant called her at about 11 a.m. to tell her that Shanika had been trying to cook and fell into some boiling water, in which she burned her hands.

When she arrived home an hour later, Mary found Shanika sleeping. The defendant had not taken her to the hospital because his sister had told him that the hospital staff would think that he had abused her. Mary noticed a pot on the stove, some spaghetti and a little water on the floor.

She and the defendant took Shanika to Union Health Services (the clinic). Mary did not question her daughter about the incident at that time because she was only concerned about obtaining medical treatment for Shanika. As they were leaving for the clinic, however, Shanika told her, "Chipper did it Mama. Chipper did it." Chipper was the defendant's nickname.

At the clinic, the medical staff treated Shanika's hands and sent her home. Mary took Shanika back to the clinic the next day and the following day. Willie Mosley, Mary's mother, subsequently took Shanika to Illinois Masonic Hospital, from which Shanika was transferred to the burn unit at Loyola University Hospital. She had two skin grafts at Loyola and, at the time of trial, she had undergone four of five other necessary surgeries for her burns. She had not regained full range of motion in her hands and continued to require physical therapy. During Mary's testimony, the State presented Shanika to the jury so that the jury members could observe her burns. (Shanika did not testify.)

Mary further testified that her daughter would not talk about burning her hands for a year or a year and a half after the incident, but, in a conversation at that later time, Shanika told her "exactly what happened that day." Mary did not otherwise state the contents of this later conversation.

Mary did not tell anyone at the clinic that her daughter had said "Chipper did it," but she did tell the police everything Shanika and the defendant had told her. She also told a nurse at Loyola and a Department of Children and Family Services (DCFS) worker that Shanika had said "Chipper did it."

Willie Mosley's testimony was consistent with her daughter's. Youth Officer Terry Belinski testified that, in November 1990, he spoke with Shanika's mother and grandmother, and, on November 21, he went to Loyola to take pictures of Shanika, which the State introduced into evidence. He also interviewed the defendant, who told him that he and Shanika were preparing spaghetti when he left the room to use the bathroom. As he returned, he saw Shanika fall into the pot of water, and she and the pot fell to the floor. From the apartment, Belinski recovered the pot, which the State also introduced. The depth of this pot was $4^3/4$ inches. Belinski did not talk to Shanika because she was in the hospital and sedated most of the time.

Dr. Richard Gamelli, chief of the Loyola burn unit and an expert on burns, testified that he treated Shanika at Loyola. He described the burned area on Shanika's hands as the same area that would be covered by a pair of gloves. There was a well-circumscribed point between the injured skin and the uninjured area, and she had no other injuries, such as bruises which would have indicated that she had fallen.

The doctor identified pictures taken of Shanika within 24 hours of her arrival at Loyola. In these pictures, the upper half of Shanika's body is naked. Although the burns on her hands are obvious, no other injuries are evident from these pictures. The burned area on her hands is uniform and covers each hand completely from a ring around each wrist to her fingertips.

Dr. Gamelli explained that he sees 100 to 150 burns a year from scalding. He sees 138 children per year with burns, and 90% of these burns are from scalds. He stated that burns from immersion in hot liquid are uniform, whereas burns from spills of hot liquid look like a chocolate sundae melting because of the marks the hot liquid leaves where it runs along the skin. When persons fall into hot liquid and attempt to extricate themselves, there is usually a primary injury from the immersion in the liquid and other associated injuries from splashed or splattered liquid. The latter form of injury is usually very erratic in appearance. Dr. Gamelli had treated at least 25 and maybe more than 100 injuries where someone had fallen off a counter with a hot substance. The doctor explained:

> "Normally when someone falls and strikes a vessel with liquid in it, it splatters and flies all over the place, we will see an injury on the left side, something on the right side, we see it came into contact, ran down to the arm, neck, head, the chest."

In addition, when a burn victim's hands have come into contact with a pot containing hot liquid, the victim has contact burns from the hot

metal of the pot. Shanika did not have any contact burns. In cases where a child has fallen into a pot of boiling water, usually only one extremity is involved. Shanika's injuries were not like other burns sustained in falls involving hot liquid because she had no burns from splashing liquid. A long-sleeve cotton sweater would not be a barrier to the heat from boiling water.

Dr. Gamelli estimated that, to sustain the type of injuries she did, Shanika's hands must have remained in the boiling water for five seconds to a half a minute. A normal child of Shanika's age in November 1990 would have responded to the heat of the water and removed her hands within two to three seconds. The doctor expressed his opinion that Shanika's injuries were not accidental and were the result of child abuse. The defense did not object to this testimony.

The defendant testified that he had placed Shanika on the counter next to a pot of boiling water on the stove. The level of the water in the pot was one inch to one half inch from the top of the pot. The defendant placed Shanika on the counter about 20 to 30 minutes after he placed the pot on the stove and set the gas burner to its highest setting.

The defendant instructed Shanika how to break spaghetti into the pot. They had not finished putting spaghetti into the pot when the defendant left the kitchen to go to the washroom. She was sitting on the counter about a foot from the pot at this time and her upper body was turned at an angle. The defendant left her alone in the kitchen because she was very intelligent for her age, but he also admitted that he was negligent in leaving her there.

As he returned from the bathroom, he noticed that Shanika was losing her balance. She fell into the water, and she and the pot fell to the floor. The pot landed a few feet from her. There was water all over the floor and her clothes, which consisted of a tank top, a long-sleeve cotton sweater and blue jeans. Her sweater and tank top were wet from the boiling water.

The defendant called his mother because there was no one else home. His mother used a three-way calling feature to call Mary while the defendant was still on the phone with her. Before Mary arrived home a half-hour to 45 minutes later, the defendant picked the pot off the floor and placed it on the stove, countertop or sink. Some spaghetti remained on the floor. He and Mary took Shanika to the clinic.

Harriet Fomond, the defendant's mother, testified on his behalf that, at approximately 11 a.m. on November 14, 1990, her son called and told her there had been an accident. Her testimony differed from her son's only in that she said her son told her that he did not see

Shanika put her hands in the pot because he arrived in the kitchen only after she had fallen. The defendant also did not tell his mother that Shanika had fallen off the stove or had knocked the pot off the stove.

The defendant argues that the admission of the "Chipper did it" statement and Mary's references to statements Shanika made a year or a year and a half later deprived him of a fair trial. He first objects to Mary's testimony that, on the way to the clinic, Shanika told her that "Chipper did it Mama. Chipper did it."

The defense counsel did not object to this testimony, but he immediately asked for a sidebar and moved for a mistrial on the basis that the prosecution had not tendered any reports containing the fact that Mary had told anyone of this statement. He claimed that his attempts to contact Mary had been unsuccessful. The judge denied the motion on the grounds that (1) the defense counsel had failed to make a timely objection and (2) the defense counsel had failed to interview Mary, even though he had known for some time that the State would call her as a witness.

It is unclear from the record when the prosecution learned of the existence of a hospital report containing Mary's statement that Shanika had told her "Chipper did it." At the time of the defendant's objection to the "Chipper did it" statement, one assistant State's Attorney asserted that there were no written reports about this statement. The next day, however, the other assistant State's Attorney stated that, after Mary's testimony, the prosecution had found a hospital report from Loyola that indicated Mary had told a social worker that her daughter had said "Chipper did it." The prosecution faxed this report to the defense counsel that night. During arguments on the post-trial motion, the defense counsel told the judge that the Loyola hospital report did not give him notice of Shanika's statement to her mother on November 14, 1990, because the hospital report contained the information that Shanika had made this statement a month after the incident as she was awaking from a nightmare. The State did not dispute this. The defense counsel also argued that one assistant State's Attorney had told him that the prosecution knew of the statement before trial. (He did not say that the State knew of the *report* before trial.)

The defendant's discovery request and the Loyola hospital report are not in the record before us. The record contains only the State's answer to discovery, in which the State asserts that statements of witnesses it intends to call are in police reports and probable cause transcripts.

●2 We must reject the defendant's argument that the State violated Illinois Supreme Court Rule 412(i) (134 Ill. 2d R. 412(i)) because the record is inadequate to support his claim. (*People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944.) Under Rule 412(i), the State need disclose a witness' oral statement only if that statement has been reduced to writing (*People v. Williams* (1994), 262 Ill. App. 3d 808, 635 N.E.2d 653) and if the record of the statement is in its control (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029). It is unclear from the record when the State obtained the Loyola hospital report. Moreover, because the hospital report is not in the record, it is unclear whether the report contained Mary's statement that Shanika told her *on the day of the burn incident* that "Chipper did it."

In order for a court to determine whether the State's discovery violation is reversible error, the court must examine the nature of the defendant's request for the undisclosed information. (*People v. Witherspoon* (1979), 69 Ill. App. 3d 391, 388 N.E.2d 1.) It is impossible for us to conduct this review because the defendant failed to include his discovery request in the record before us.

■ We also reject the defendant's argument that the admission of the "Chipper did it" statement violated his right to confront witnesses under the sixth amendment. We agree with the State that Shanika's statement to her mother on November 14 fell within the excited utterance exception to the hearsay rule. To qualify a statement as an excited utterance or spontaneous declaration, the party introducing the statement must show that (1) there was a sufficiently startling event or condition to produce a spontaneous and unreflecting statement, (2) the declarant did not have time to fabricate the statement and (3) the statement related to the circumstances of the occurrence. *People v. Smith* (1992), 152 Ill. 2d 229, 604 N.E.2d 858.

In determining whether a declaration after a startling event is spontaneous, courts do not look merely at the passage of time, but rather determine from all of the surrounding circumstances whether the declaration was made while the declarant was still under the influence of the startling event and without an opportunity to reflect. (*People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.) Among the factors courts consider in addition to the passage of time are:

> "the nature of the event, the mental and physical condition of the declarant, the distance travelled from the scene before making the declaration, the presence or absence of self-interest, the influences of intervening occurrences, and the nature and circumstances of the statement itself." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.3, at 704 (6th ed. 1994).

In this case, we have no difficulty concluding that the incident in which Shanika sustained her burns was a sufficiently startling event for Shanika to have produced a spontaneous statement. The defendant himself testified that she was in a lot of pain from these burns and screaming after she received them. Also, these third-degree burns were so serious that Shanika required at least seven surgeries, including two skin grafts; required continuing physical therapy even several years after receiving the burns; and will be scarred for the rest of her life. Courts have found in other cases that incidents of abuse to children satisfy the startling event requirement. (See, *e.g., People v. Nevitt* (1990), 135 Ill. 2d 423, 553 N.E.2d 368; *People v. McNichols,* (1986), 139 Ill. App. 3d 947, 487 N.E.2d 1252.) In fact, the court in *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 412, 514 N.E.2d 572, stated that the general rule is

> "that the statements and demonstrations of a nontestifying child-declarant to a witness, identifying a person as having performed certain conduct which results in pain, or is stressful to a child-declarant, and made within a reasonable time of the complained-of conduct, meet the three-prong test of admissibility as spontaneous or excited declarations or utterances."

We do not believe that the lapse of time between the burn incident and Shanika's declaration to her mother eliminated the spontaneity of the declaration. The defendant claims that we cannot determine the length of this time lapse from the record because the record does not contain the exact time that Shanika told her mother that "Chipper did it." We think, however, that the record is sufficient to show that Shanika made this declaration within a few hours of the incident. Several courts have found excited utterances despite a lapse of time similar to or greater than the lapse of time in this case. See, *e.g., Smith,* 152 Ill. 2d at 258 (five hours); *Chatman,* 110 Ill. App. 3d at 26 (18 hours).

Other circumstances also indicate that Shanika's statement to her mother was the product of the startling event rather than invention. She was only $2^1/2$ years old and had no time for fabrication between the incident and her declaration: during this time she was asleep or in intense pain from her burns. (See, *e.g., People v. Fisher* (1988), 169 Ill. App. 3d 785, 523 N.E.2d 368 (two to four hours were insufficient time for a 35-month-old child to reflect and fabricate a statement).

Furthermore, Shanika's statement that "Chipper did it" is apparently the first thing she said to her mother or to anyone after the incident. (See *Nevitt,* 135 Ill. 2d at 445 (the declaration was the first thing the child said to his mother after the incident).) Also, she made

the declaration on her own initiative rather than in response to questioning by her mother. See *Smith*, 152 Ill. 2d at 258-59 (the child's statement was spontaneous despite a police officer's questions because these questions did not reduce the tension of the event).

Finally, Shanika's statement satisfied the third prong of the test for excited utterances because the circumstances of her declaration indicated that it related to the burn incident: she made this statement shortly after sustaining the burns; it was the first thing she said to her mother after her mother arrived home; and she made the statement on the way to obtain treatment for her burns. See *Nevitt*, 135 Ill. 2d at 446.

■ The defendant next objects to Mary's following testimony during direct examination:

"Q. After your daughter was burned, did you ever talk to her or ask her about how it happened?

A. Yes. For a long while—.

[Defense Counsel]: Objection.

THE COURT: Sustained."

On redirect, the prosecutor asked her about this later conversation again:

"Q. Eventually did she ever tell you *** how she got burned on that day?

A. Yes, she did.

Q. About how much time passed [before she] would talk to you about what happened that day?

A. About a good year or year and [a] half.

Q. What did she tell you?

[Defense Counsel]: Objection.

THE COURT: Sustained. Question is not part of the direct testimony. Its inappropriate under redirect testimony.

[Assistant State's Attorney]: Sidebar."

After a sidebar, the prosecutor asked Mary whether Shanika had told her "exactly what happened that day." Mary responded: "Yes."

The defendant complains that this testimony violated his right to confrontation because Mary implied that Shanika had made incriminating statements a year after the incident and these later statements were hearsay. We disagree that this testimony was error. The defendant's objection prevented Mary from testifying about what Shanika told her during this conversation. As the State correctly argues, testimony that a conversation occurred, as opposed to testimony concerning the substance of that conversation, is not hearsay. (See *People v. Lash* (1993), 252 Ill. App. 3d 239, 624 N.E.2d 1129; *People v. Malave* (1992), 230 Ill. App. 3d 556, 595 N.E.2d 117.) The defendant cites *People v. Spivey* (1978), 58 Ill. App. 3d 677, 374

N.E.2d 1068, for the proposition that, even if a witness does not testify to the exact contents of a hearsay statement, the testimony is improper if the jury can deduce the contents of the statement. We believe, however, that the *Spivey* case is distinguishable from the case before us because, in that case, the officer related the contents of the hearsay statement almost verbatim.

■ We now turn to the most troubling of the defendant's claims of error: his contention that the assistant State's Attorney's comments in rebuttal to the defendant's closing argument deprived him of a fair trial. During the opening portion of the State's closing argument, the only reference to Shanika's statements to her mother was this: "[A]s they left the apartment, her young daughter said to her, Chipper, the defendant Chipper did it." The defense counsel then argued that, if Mary had told anyone that Shanika had said "Chipper did it," the State would have called those people as witnesses; and, if Shanika had told her mother that "Chipper did it," Mary would have questioned Shanika about this. In rebuttal, the other assistant State's Attorney argued as follows:

"You heard Mary Mosley say from the stand that the first time Shanika could give her details, specific details of what happened that day was over a year after it happened. She was no longer still talking to police officers a year later. Shanika was at home just going through physical therapy. And just like when Mary on the stand was asked what did Shanika tell you and this table said objection, hearsay.

[Defense Counsel]: Judge, I'm going to object.

THE COURT: Objection will be sustained.

Lawyers have a right to object to anything they feel is inappropriate. Ladies and gentlemen, I talked to you about that at the beginning of the trial. So that's—nobody is trying to take any advantage of you or disadvantage of you in that regard. If there was an objection at that time, there was a ruling by the Judge. That's thoroughly appropriate, normal action in a courtroom.

[Assistant State's Attorney]: Thoroughly appropriate and normal action to prevent hearsay from coming in.

[Defense Counsel]: Judge, I'm going to object, ask that the State be admonished to disregard that argument to lead to a different argument.

THE COURT: Jurors will disregard the argument. Objection sustained."

Following the closing arguments the judge instructed the jury that it should not consider the arguments of counsel to be evidence.

The State argues that the assistant State's Attorney's comments were invited by the defendant's attack on Mary's credibility. We dis-

agree that the comments were invited because the prosecutor's comments went far beyond a response to the defendant's argument. (See *People v. Ray* (1984), 126 Ill. App. 3d 656, 660, 467 N.E.2d 1078.) The assistant State's Attorney did not merely argue that Mary had in fact questioned her daughter, she further suggested that Shanika had implicated the defendant in a hearsay conversation a year after the incident, and she suggested that the defendant was keeping relevant information from the jury by objecting to the contents of this conversation.

We believe that the prosecutor's comments were error. Courts have held that remarks that the defense prevented the jury from hearing certain evidence by objecting may be reversible error. (See, *e.g., People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41; *People v. Lopez* (1980), 89 Ill. App. 3d 456, 411 N.E.2d 1071; *People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402.) It also may be error to refer to excluded evidence in closing argument. See, *e.g., People v. Mullen* (1990), 141 Ill. 2d 394, 566 N.E.2d 222.

We do not believe, however, that the prosecutor's comments were reversible error. As the court stated in *People v. Ward* (1992), 154 Ill. 2d 272, 609 N.E.2d 252, " 'comments constitute reversible error only when they engender substantial prejudice against a defendant [citation], such that it is impossible to say whether or not a verdict of guilt resulted from those comments.' " (*Ward*, 154 Ill. 2d at 323, quoting *People v. Henderson* (1990), 142 Ill. 2d 258, 323.) An error is harmless if, had the error not been committed, the defendant still would not have been entitled to prevail. *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 596 N.E.2d 646. See also *People v. Brown* (1983), 113 Ill. App. 3d 625, 447 N.E.2d 1011 (requiring that, for error from a prosecutor's comments to be harmless, it must be harmless beyond a reasonable doubt or not have contributed to the defendant's conviction).

We believe the defendant's case is similar to *People v. Wilson* (1984), 123 Ill. App. 3d 798, 463 N.E.2d 890, in which the court found that improper prosecutorial comments in closing argument were harmless in light of the overwhelming evidence against the defendant. In *Wilson*, a jury convicted the defendant of residential burglary on the testimony of a cab driver who drove him to the location of the burglary and a building manager who saw the defendant carry the complainant's stereo from the building. (*Wilson*, 123 Ill. App. 3d at 800.) During closing argument, the prosecutor commented that the defense had objected to a witness' testimony because the defense did not want the jury to know the truth. After the trial judge sustained an objection to this remark and ordered the prosecutor to argue the

facts, the assistant State's Attorney argued that " 'the objection to that question was sustained and the officer was not allowed to answer it and I think you ought to consider why.' " (*Wilson*, 123 Ill. App. 3d at 803.) The court found that this argument was improper but that it did not contribute materially to the defendant's conviction.

In the case before us, the prosecutor's comments were almost identical to those in *Wilson*, and, as in *Wilson*, the evidence against the defendant was overwhelming. We are persuaded that, even without the prosecutor's improper references to excluded evidence, the jury would have nevertheless convicted the defendant.

The defendant's description of the burn incident was simply not reasonable. It is unreasonable (1) that he would have left a 2½-year-old child next to a pot of boiling water in order to use the bathroom; (2) that, if he were teaching Shanika how to break spaghetti into a pot as he said he was, he would leave to use the washroom in the middle of doing so; and (3) that Shanika would have sustained burns only to her hands if water that had been heating on the stove's highest setting for 20 to 30 minutes had fallen with her to the floor and soaked her clothes.

Moreover, other testimony at trial and the physical evidence contradicted his claim that the burns were accidental. The defendant's testimony concerning his location at the time of the burn incident was inconsistent. Although the defendant told the police and the jury that he saw Shanika fall into the pot of water, his mother testified that he told her he was in the bathroom when Shanika burned herself.

Dr. Gamelli's testimony also contradicted the defendant. The doctor testified that, given his experience with burn victims and his examination of Shanika, her burns could not have occurred the way the defendant described. She had no contact burns or secondary splash burns, which would have certainly resulted if she had fallen into the pot and pulled it with her onto the floor. Her clothes would not have been a barrier to the heat from the water the defendant said soaked them, yet the pictures of Shanika supported the doctor's testimony that her injuries were limited to her hands.

In addition, Dr. Gamelli testified that Shanika's hands must have stayed in the boiling water for 5 to 30 seconds in order to have sustained the burns they did. This contradicted the defendant's testimony that she had pulled her hands from the water as she fell. Also, it was the doctor's experience that burns sustained from one's losing one's balance and falling into hot liquid were limited to one extremity. Shanika had almost identical burns to both hands, despite the fact that, as the defendant testified, she had to twist her upper body in order to reach the pot with both hands.

This is not a case where the guilt or innocence of the defendant depended entirely on the credibility of the accuser and the defendant, in which no error is permissible. (*Cf. Emerson*, 97 Ill. 2d at 502.) With her statement that "Chipper did it," Shanika did contradict the defendant's claim that her burns were accidental, but the physical evidence and testimony of other witnesses also refuted the defendant's claim.

In cases where courts have reversed convictions on the basis of prosecutorial misconduct, the transgressions have been more severe than they were in this case. For example, in *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880, the supreme court reversed the appellate court's determination that closing arguments were harmless error. In *Weathers*, a jury convicted the defendant of armed robbery on the basis of two eyewitness identifications. In closing argument, the assistant State's Attorney made repeated improper comments despite four sustained objections to his remarks. He accused the defendant and the defense counsel of lying and of trying to create reasonable doubt through confusion and misrepresentation; he accused the defendant of being an habitual criminal, although it was undisputed that the defendant had never been arrested before; he argued that the fact the defendant presented a defense proved that he knew the State had proved him guilty beyond a reasonable doubt; and he argued that the court knew the State had proved the defendant guilty beyond a reasonable doubt. (*Weathers*, 62 Ill. 2d at 118-19.) See also *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432 (reversing on the basis of five or six comments, to which the defendant failed to object, plus 17 improper comments to which the judge sustained objections); *Ray*, 126 Ill. App. 3d at 659-64 (reversing on the basis of the prosecution's comments in closing argument, including 16 accusations that the defense counsel was lying, comments on the defendant's failure to testify, suggestions that the defendant's objections kept out evidence favorable to the prosecution and accusations that the defendant was hiding behind his constitutional rights); *People v. Weinger* (1981), 101 Ill. App. 3d 857, 866, 428 N.E.2d 924 (reversing because of 35 alleged instances of prosecutorial misconduct); *Hovanec*, 40 Ill. App. 3d at 17-18 (reversing the defendant's conviction on the basis of the prosecutor's offer before the jury to stipulate to a pretrial statement, repeated attempts to ask a question to which objections had been sustained and improper comments in closing argument). But see *Lopez*, 89 Ill. App. 3d at 457 (the court overturned the defendant's conviction on the basis of one closing remark in which the prosecutor referred to excluded evidence and accused the defense counsel of keeping this evidence from the jury; but the court pointed out that the evidence was not overwhelming).

In the case before us, there was a timely objection to both of the prosecutor's comments and an appropriate instruction to the jury after each comment and after the closing arguments. See *People v. Ramey* (1992), 151 Ill. 2d 498, 603 N.E.2d 519 (the State persisted in improper closing argument after the court had sustained objections to the argument and instructed the jury to disregard the argument, but the court's actions made any error harmless); *People v. Moody* (1990), 199 Ill. App. 3d 455, 466, 557 N.E.2d 335 ("Timely objection by defense counsel and an appropriate admonition by the court will prevent error, or in the event error occurs, render it harmless, even when the alleged error occurs more than once").

Moreover, we believe that the prejudice from an implication in closing argument that Shanika implicated the defendant a year after the incident was somewhat mitigated by the fact that the jury was already aware that she had implicated him on the day of the incident. (See *People v. Gomez* (1986), 141 Ill. App. 3d 935, 491 N.E.2d 68 (an assistant State's Attorney's improper testimony was harmless error because its substance was established by other properly admitted evidence).) For these reasons, we do not believe that prosecutorial misconduct contributed to the defendant's conviction and we judge that any error was harmless beyond a reasonable doubt. See *Wilson*, 123 Ill. App. 3d at 806.

Although we cannot conclude that the State's repeated attempts to introduce the substance of Shanika's hearsay statement deprived the defendant of a fair trial, we wish to express our disapproval of what one court has described as "prosecutorial brinkmanship" (see *People v. Starks* (1983), 116 Ill. App. 3d 384, 396, 451 N.E.2d 1298). The State's actions in this case were in disregard of its duty to provide the defendant with a fair trial, and the repeated attempts to introduce a statement that was clearly hearsay jeopardized the conviction in an otherwise strong case against the defendant. If the State's evidence in this case had not been as strong, we would order a new trial.

■ Next, we address the defendant's contention that the judge improperly allowed evidence of his previous felony convictions. The defendant testified on direct examination that he had been convicted a couple of times of "some felonies" and that he was on probation at the time of the burn incident. The defendant had made a pretrial motion *in limine* to exclude any reference to his prior convictions, at least two of which were convictions for aggravated battery. The judge had ruled, however, that the State could inform the jury that the defendant had prior felony convictions, but could not reveal the nature of the felonies.

The defendant relies on a recent supreme court case, *People v. Williams* (1994), 161 Ill. 2d 1, 641 N.E.2d 296, in which the court held that, in a murder trial, the judge improperly admitted evidence that the defendant had a previous conviction for voluntary manslaughter. The trial judge in *Williams* admitted evidence of the conviction because he found that it had " 'great probative value in a case of [that] nature.' " (*Williams*, 161 Ill. 2d at 40.) The court held that the judge improperly admitted the conviction because it did not relate to the defendant's credibility. Instead, the judge had admitted it as evidence of the defendant's guilt of murder. *Williams*, 161 Ill. 2d at 41.

We disagree that *Williams* requires us to find the admission of the defendant's prior felonies was error. We do not interpret the *Williams* decision as contrary to the holding in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, that evidence of past felonies may be introduced to impeach a defendant. It is clear that the court restricted its holding to the particular facts of the case before it. We, therefore, construe *Williams* as holding that a judge may not admit past felonies for the purpose of showing a defendant's propensity to commit a crime.

Unlike *Williams*, the judge in the case before us did not clearly admit the defendant's previous felonies as evidence of his propensity to commit aggravated battery. In ruling on the defendant's motion *in limine* on this issue, the judge stated that he agreed with the prosecutor's argument that the law is that prior felony convictions are relevant to a person's credibility. Also, contrary to the facts in *Williams*, the judge in the case before us excluded references to the type of felony convictions the defendant had. We, therefore, judge that it was not error for the trial judge in this case to allow evidence that the defendant had past felony convictions. For these reasons, we affirm the defendant's conviction.

■ Finally, the defendant argues and the State concedes that the order of sentence and commitment is incorrect because it indicates judgment against the defendant on all three charges against him, although these charges arose out of the same physical act. The defendant argues that we must remand his case for this correction, but we have the authority to order a correction of the mittimus. (*People v. Matthews* (1990), 205 Ill. App. 3d 371, 562 N.E.2d 1113.) The record shows that the judge stated twice that he was entering judgment on the charge of heinous battery. Pursuant to our authority to correct the mittimus, therefore, we order that the written order of sentence

and commitment be corrected to show the defendant's conviction for heinous battery only.

Judgment affirmed.

McNAMARA, P.J., and ZWICK, J., concur.