THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LAWRENCE SIEBERT, Defendant-Appellant.

First District (5th Division)    No. 76-1469

Opinion filed May 25, 1979.

Charles Hoffman and Peter J. Schmiedel, both of Chicago (Gerald Block, of Bannister & Block, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Michael Levitin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendant was found guilty of attempt murder (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4 and 9—1) and delivery of a controlled substance over 30 grams, to wit, cocaine. (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a).) He was sentenced to a term of 7 to 21 years for each conviction, the sentences to run concurrently. His son, Dean Siebert, was also indicted for both offenses, while Dean's wife, Carol Siebert, was indicted only on the delivery count. Dean and Carol were found guilty by the court at a bench trial for the lesser-included offense of delivery of a controlled substance under 30 grams, to wit, cocaine. (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(b).) The instant appeal concerns only Lawrence Siebert's convictions.

On appeal defendant contends that: (1) he was not proven guilty of attempt murder beyond a reasonable doubt; (2) the instructions for attempt murder given to the jury were erroneous; (3) the evidence of his prior conviction for possession for sale of marijuana was improperly admitted to impeach his credibility; (4) the evidence of the prior conviction when coupled with the prosecutor's comments in his closing argument were improper and constituted reversible error; and (5) his sentence was excessive. We affirm in part, reverse in part, and remand. The following pertinent testimony was adduced at trial.

*For the State*

Steven Weber testified. On December 17, 1974, he was an agent with the Metropolitan Narcotics and Dangerous Drugs Enforcement Group (hereafter MEG). At about 6 p.m., he called Carol Siebert and arranged for a sale of cocaine to take place later that night. He and his partner, Margaret Pastore, arrived at the address Carol gave him at about 12:30 a.m. They were admitted to a fourth-floor apartment. Both Carol and Dean Siebert were present in the apartment. Carol Siebert asked Agent Weber to give her the money so she could get the cocaine. Weber refused to give the money before he saw the cocaine. Carol called her connection and she said he would be over in 20 minutes. After 35 minutes had passed she again made a phone call and returned to say that the connection was on the way. About an hour later there was a knock on the door. Carol Siebert opened the door and the defendant, Lawrence Siebert, entered.

He went directly to the kitchen and was followed by the others. Defendant pulled out a small scale and plastic bags of white substance. He weighed the substance and told Weber that it was a little short in weight but was good stuff. Agent Weber sent Agent Pastore to get the money from the car. Defendant gave Agent Weber the plastic bags and they returned to the living room. On a closed-circuit television set Weber could see Agent Pastore enter the lobby of the building. She returned with the money and gave it to Lawrence Siebert. At that time Dean Siebert and Agent Weber observed two back-up agents enter the lobby on the closed-circuit television. Dean asked "Who's that?" and Lawrence yelled "Cops" and threw the money into the air. Weber drew his gun and announced he was a police officer and told them they were under arrest. Dean Siebert lunged at Weber and Weber threw him against the wall. Lawrence Siebert grabbed Agent Pastore by the neck and pushed her into Weber. Weber fell to the floor with Dean and Lawrence on top of him. Lawrence and Dean had their hands on Weber's gun and were turning it towards Weber's head, pointing it between his eyes. Lawrence Siebert had his finger on the trigger and Weber could feel pressure on his finger. Weber was pushing the gun away from his head when it discharged twice. The gun was about three inches from his head, and Weber felt intense heat on his forehead. Agent Pastore told the Sieberts to get off Weber but Lawrence told her to go ahead and shoot and said, "I'm going to kill this m_____ f_____." Agent Pastore then shot Lawrence in the leg. While Agent Pastore covered Lawrence and Dean, Weber searched for Carol Siebert who had escaped.

Margaret Pastore testified. She was the MEG agent who accompanied Agent Weber to the apartment. Her testimony was consistent with Agent Weber's account of the events. After the struggle had started she was able to free herself from the others. She heard Lawrence Siebert say "I'm going to kill you" to Weber. When Weber's gun discharged twice, Weber told Agent Pastore to shoot Lawrence Siebert and she shot him in the leg.

A chemist testified that he tested a sample of the white substance from the plastic bags and determined that it contained cocaine. The total weight of the substance was 55.89 grams.

*For the Defense*

Carol Siebert testified. She is Dean Siebert's wife and Lawrence Siebert's daughter-in-law. On December 17, 1974, she received a phone call from Agent Weber who wanted to purchase cocaine. She responded that she did not want to be involved but that Lawrence Siebert wanted to meet Weber later that evening. She did not know that Lawrence was bringing cocaine with him. Weber and Agent Pastore arrived at midnight.

898

About two hours later, Lawrence Siebert arrived and went into the kitchen with a black bag. She and Dean remained in the living room while Lawrence removed a scale and began weighing a bag. She and Dean watched movies on the television set in the living room. Agent Pastore left the apartment but Carol did not know why. When Agent Pastore returned, Weber pulled his gun and said "Police, freeze" and fired his gun. Carol then ran from the apartment.

Lawrence Siebert testified. On December 17, 1974, he spoke with his son Dean at about noon. He told Dean that he might stop at his apartment that night. He did not talk to Dean or Carol again until he arrived at their apartment at about 1 a.m. Upon entering the apartment he saw Agents Weber and Pastore, but he did not know who they were. He admitted carrying a paper bag into the kitchen, but denied possessing any cocaine. Dean and Weber came into the kitchen, and Lawrence and Weber were introduced. They talked about several topics including Columbian marijuana. He stated that his purpose in visiting Dean was twofold; first, to spend the night with Dean and Carol and, second, to purchase some marijuana. He had brought along $1500 for this purpose. He denied possessing or weighing any cocaine, although he admitted he brought a scale to weigh the marijuana he hoped to purchase. He asked Weber if he had any marijuana to sell and Weber replied that he would send Pastore to get some. Pastore left and returned a short time later with a large draw bag. She walked over to Weber and opened the draw bag and pulled out "the biggest pile of money" Lawrence had ever seen. She gave the money to Weber to put it inside his coat and then pulled out a gun. Weber pointed the gun at Lawrence and screamed, "This is a rip-off" and then shot at Lawrence. Lawrence then grabbed Agent Pastore and used her as a shield. He grabbed Weber's arms and they fell on the couch. Weber then began to pull the gun towards Lawrence's head. Lawrence yelled, "Don't blow me away." He realized that he could not hold Weber's arm and Weber kicked him to the other side of a table. Weber then shot him in the stomach. He was able to get Weber in a head lock and point the gun into the air. He asked Weber, "Who in the hell are you?" and then told Dean, "Call the police." He looked at his son and saw that Pastore had a gun to his head. Agent Pastore told Lawrence to get off Weber. When he refused she said, "If you don't get off I am going to blow your son away." Lawrence told her he would not get off until she dropped her gun. She informed him that they were Federal agents and he started to get off Weber. Weber then yelled, "Now Peggy" and she shot Lawrence in the hip. Agent Weber stood up, put his gun in Lawrence's face and pulled the trigger. However, the gun was jammed and would not fire. Weber then kicked Lawrence 30 to 40 times. Although Lawrence had been shot twice, Weber did not call for medical help immediately.

Lawrence denied ever delivering cocaine on the night in question or attempting to murder Agent Weber.

*The State's Rebuttal*

Dr. Hagop Boghussian testified. He was a surgeon who operated on Lawrence Siebert on December 18, 1975. He found three puncture wounds on the defendant presumably caused by one bullet, but possibly by two bullets. Contrary to Lawrence's claim of a stomach wound, the doctor did not find any bullet wound in the stomach or back.

The State also introduced into evidence for impeachment purposes a certified copy of conviction from Los Angeles, California, dated March 3, 1975, showing that on that date Lawrence Siebert was found guilty of a felony, namely, possession of marijuana for purposes of sale. The defense objection to this use of the conviction was overruled. The State and defense then rested.

In their closing arguments the Assistant State's Attorneys made the following comments:

"Furthermore, this defendant, Lawrence Siebert in March of 1975 was convicted of a felony of possession of marijuana for purposes of sale. Now, is that the kind of person you're going to believe? Felony conviction. Is that the kind of person you can place your trust in.

\* \* \*

He's been around. In weighing his credibility, take into account only two weeks after this incident happened, he was convicted in Los Angeles, California on another delivery. He knows police.

\* \* \*

THE COURT: He was convicted of that offense that took place—

MR. LEVIN [Defense attorney]: The State wants to—

MR. ROMANO [Assistant State's Attorney]: On January 1, 1975. And this occurred on December 18th of 1974 and that is two weeks. Only two weeks after this incident happened that he was convicted in Los Angeles, California on a possession with intent to deliver. Keep that in mind when weighing this man's credibility. He has been around.

\* \* \*

Ladies and gentlemen, the defendant, besides being a drug seller, besides being a person that is capable of committing a murder—

\* \* \*

Besides being guilty, ladies and gentlemen, of the charges contained in the indictment before you, the defendant is a compulsive liar."

Defense counsel promptly objected to all but the third comment.

The jury found defendant guilty of both offenses and he was sentenced to two concurrent 7 to 21 year terms. This appeal follows.

OPINION

## I.

■■ Defendant contends that he was not proven guilty of attempt murder beyond a reasonable doubt. It is for the jury as trier of fact to weigh the credibility of witnesses and arrive at a verdict. (*People v. Dillon* (1975), 28 Ill. App. 3d 11, 327 N.E.2d 225; *People v. Sykes* (1977), 45 Ill. App. 3d 674, 359 N.E.2d 897.) Our review of the record indicates sufficient evidence, if believed, to support the conviction.

## II.

Defendant contends that under the standard of *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, the jury was improperly instructed on the attempt murder charge. No objection to the instruction was made at trial and defendant's appellate brief failed to raise this issue. However, defendant was given leave to file a supplemental brief on this issue and has done so. The attempt murder instruction given in the instant case was erroneous under *Harris* since it was not limited to the specific intent to kill.

■■ The State urges that by failing to object to the instruction at trial, defendant has waived this error. Relying on *Harris*, defendant argues that the error is preserved under Supreme Court Rules 451(c) and 615(a). (Ill. Rev. Stat. 1977, ch. 110A, pars. 451(c) and 615(a).) In the recent case of *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the supreme court held that the procedural default rule of waiver barred defendants from raising the issue of the erroneous attempt murder instructions on review. There the defendants failed to object at trial or in their post trial motions to instructions very similar to those given in the instant case. The court noted that waiver is the general rule and that Rule 451(c) is a limited exception to be used "to correct 'grave errors' [citation], or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed [citation]." (*Roberts*, 75 Ill. 2d 1, 14, 387 N.E.2d 331.) The instruction was not found to be such a grave error as to require the application of Rule 451(c) nor was the evidence found to be closely balanced. The use of similar instructions in the instant case would not constitute grave error. Since the evidence of intent in the instant case is clearer than in *Roberts*, the second exception of Rule 451(c) is not applicable. In addition, the instruction does not constitute plain error under Rule 615(a). (*Roberts*.) We therefore conclude that defendant has

waived the issue of the erroneous instruction and cannot meet the requirements of Rules 451(c) or 615(a).

### III.

Defendant also contends that his prior conviction in California for possession of marijuana for sale was erroneously used to impeach his credibility, since its probative value was substantially outweighed by its prejudice. The decision on whether to allow a prior conviction to be used to impeach a witness is a judicial function and is governed by the rules outlined in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. There, the supreme court directed that Rule 609 of a draft approved by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States be followed in future cases. Although Rule 609 of the Federal Rules of Evidence as later adopted by the United States Supreme Court omitted the discretionary authority of the draft rule approved in *Montgomery*, the Illinois Supreme Court has ruled that the discretion provided in the draft rule should be followed. *People v. Ray* (1973), 54 Ill. 2d 377, 297 N.E.2d 168.

The approved draft of Rule 609 provides in part:

"Rule 609. Impeachment by Evidence of Conviction of Crime.

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date."

The Advisory Committee's comments to this rule include the following pertinent comments:

"It says, in effect, that the conviction 'may,' as opposed to 'shall,' be admitted; and we think the choice of words in this instance is significant. The trial court is not *required* to allow impeachment by prior conviction every time a defendant takes the stand in his own defense. The statute, in our view, leaves room for the operation of a sound judicial discretion to play upon the circumstances as they

unfold in a particular case. There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field."

The comments also include various factors to be considered in the balance as suggested by *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, *cert. denied* (1968), 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421. Among these are the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged.

■■ Defendant contends that the trial court totally abdicated its duty in balancing the probative value and the prejudicial effect of introducing the prior conviction. To support this contention, defendant urges that the court was under the impression that it had no discretion to exclude the evidence as demonstrated by the following passage:

"The Court: So far as I am concerned, I don't understand how you can prevent the introduction of that since it is a felony conviction which would go to his credibility as a witness."

Other portions of the record demonstrate that the court was aware of the *Montgomery* case and we may assume that the court gave proper consideration to the relevant factors. (*People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276.) We find that the prejudicial effect of the introduction of defendant's prior conviction substantially outweighed the probative value insofar as the delivery of a controlled substance charge is concerned, but not as to the attempt murder charge.

■■ Evidence of past crimes is not admissible to prove a defendant's propensity to commit the crime charged. (*People v. Richardson* (1959), 17 Ill. 2d 253, 161 N.E.2d 268; *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058.) Introduction of a prior conviction is supposedly limited to the purpose of impeaching the credibility of the witness. When the conviction shows a propensity for crime, more than a lack of credibility, impeachment by means of the prior conviction should not be allowed. Considering the factors suggested in *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, *cert. denied* (1968), 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421, it is clear from the following that defendant's prior conviction would be used more to show his propensity for drug sales, rather than to impeach his credibility.

1. *The nature of the crime.* It is unclear whether possession of controlled substances for sale is probative of a witness' credibility. One court has expressed its views as follows:

"The offense of possession of heroin does indicate a disposition to place the advancement of individual self-interest ahead of principle or the interest of society, and such proof may suggest a willingness to do so again on the witness stand." (*People v. Nelson* (1975), 31 Ill. App. 3d 934, 938, 335 N.E.2d 79.)

We feel that any crime indicates such a disposition. Since possession of marijuana for sale does not have a direct bearing on honesty, we feel that it is inconclusive as to a witness' veracity.

2. *Nearness or remoteness.* In the instant case, the record shows that the offense in California occurred on January 1, 1975, just two weeks after the offense in Illinois. Defendant was convicted in California on March 3, 1975, and his trial in Illinois began in September 1976. The prosecutor emphasized the proximity of the offenses in his closing argument.

3. *The subsequent career of the person.* This is irrelevant in our case and is not before us on the record.

4. *Whether the crime was similar to the one charged.* The offenses are both drug related and are concerned with the sale of controlled substances. For practical purposes the charges are almost identical.

■■ Although a prior conviction for a crime which is the same as the crime now charged does not mean that it cannot be introduced (*People v. Dee* (1975), 26 Ill. App. 3d 691, 325 N.E.2d 336), we feel that it was improper in the present case. It may have been difficult for the jury to limit the consideration of the prior conviction to the issue of defendant's credibility. The other offense does not directly reflect on his veracity and is of limited probative value. The proximity in time of the two offenses tends to suggest a recurring pattern of sales. The fact that the crimes involved were nearly identical and took place within a two-week period would lead to the natural conclusion that "if he did it before, he probably did so this time." (*Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, 940, *cert. denied* (1968), 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421.) We feel that the prejudicial effect of the prior conviction substantially outweighed any probative value as to the delivery charge. The trial court's admission of this evidence as to that charge was an abuse of discretion in the application of the *Montgomery* test which requires a reversal of that conviction and remand for a new trial. However, the prejudice does not extend to the charge of attempt murder since no propensity to commit that offense is suggested.

## IV.

Defendant contends that the prosecutors' comments in their closing

arguments were improper and when coupled with the use of his prior conviction, constituted reversible error. The prosecutors' closing comments highlighted defendant's past conviction and his familiarity with police and police procedure. The prosecutor's reference to defendant as a "drug seller" would suggest a propensity on defendant's part to deal in drugs. These remarks increase the prejudicial effect of the prior conviction and demonstrate why it should not have been admitted. Consistent with the preceding discussion, the prejudice in the instant case is limited to the conviction for delivery of a controlled substance.

■■ Although we do not condone the improper reference to the defendant as a "compulsive liar," we note that the trial court promptly sustained an objection to the statement and instructed the jury to disregard it. In addition, we do not believe that the remarks were so prejudicial as to require reversal of the attempt murder conviction. See *People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700.

## V.

■■ Finally, defendant contends that the sentence of concurrent terms of 7 to 21 years is excessive. Since we reverse defendant's conviction for delivery of a controlled substance and remand for a new trial, we review only the attempt murder sentence. Absent an abuse of discretion by the trial court a sentence may not be disturbed upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial court was in the best position to weigh the various considerations necessary to determine an appropriate sentence. Upon this record, we cannot say that the trial court's sentence as to the attempt murder conviction was an abuse of discretion.

## VI.

Accordingly, the conviction for attempt murder is affirmed; the conviction for delivery of a controlled substance is reversed and remanded for a new trial.

Affirmed in part, reversed in part, and remanded for a new trial.

SULLIVAN, P. J., and LORENZ, J., concur.