THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANDREW MAXWELL, Defendant-Appellant.

Fourth District   No. 4—93—0918

Opinion filed May 16, 1995.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

A jury found defendant Andrew Maxwell guilty of aggravated battery (720 ILCS 5/12—4(b)(6) (West 1992)), and the trial court sentenced him to 10 years' imprisonment. Maxwell now appeals, raising two issues. We affirm.

At the pretrial hearing held on August 17, 1993, Maxwell made motions for dismissal of the indictment on the basis of selective prosecution (denied) and for interlocutory appeal (denied). On the first day of the trial, Maxwell made motions to denote race and gender of prospective jurors during *voir dire* examination (allowed), to ask prospective jurors certain preliminary questions (allowed in part, denied in part), for a daily transcript of the proceedings (denied), to proceed to trial without mechanical restraint (denied), and for appointment of outside counsel (denied). In addition, Maxwell filed two motions *in limine* to prevent anyone from eliciting details concerning the prior convictions of his witnesses (allowed, but the State would be permitted to impeach with prior felony convictions) and to prevent witnesses from mentioning Officer Ronald French, since the State would not call him as a witness (denied). Maxwell also moved for production of prisoners as witnesses for the defendant, which was allowed in part and denied in part. Maxwell wanted to call more than a dozen condemned prisoners, most of whom had not been timely disclosed. Maxwell argued many of the rejected witnesses were essential to his defenses of necessity and defense of others. Ultimately, the trial judge allowed one witness who was not timely disclosed to testify. Subsequent to the hearing on Maxwell's motions, the jury was sworn and opening statements given. On the second day of trial, Maxwell filed a motion for substitution of judge for cause. The trial court determined the motion was not timely.

At trial, the State's evidence revealed the following. On November 11, 1992, inmate David Smith, located in the condemned unit of Pontiac Correctional Center (Pontiac), threw hot water on an officer and scalded him. Correctional captain David Miller, Officer Ronald French, and correctional lieutenant Joseph Brewer went to Smith's cell, No. 410, to move him from that cell, which had bars, to a cell with a steel door. Defendant Maxwell resided in an adjacent cell, No.

411. Smith was calm and offered no resistance. His hands were cuffed behind his back and he was removed from his cell. Smith was taken to a landing where there was a set of stairs leading to the gallery below. Officer French searched Smith on the middle of the landing. Smith was not leaned over the railing, and he did not say French was attempting to throw him over the railing. Brewer told Miller he would go to the gallery below and open the cell door. As Brewer passed between French and cell No. 411, Maxwell threw hot liquid on Brewer. The liquid contained an oily substance which Brewer was unable to remove. The inmates have "stingers," which are essentially hot plates used to heat water and coffee. A stinger can boil a cup of water in one minute. The inmates also have baby oil in their cells, and the substance thrown on Brewer was consistent with baby oil. Brewer left the gallery to receive medical attention. Brewer had first- and second-degree burns on his face, ear, neck, shoulder, and back, with permanent scarring. He also had an inner ear problem after the incident. He was in the hospital for one week and did not return to work for one month.

Maxwell decided to represent himself, and his evidence revealed the following. On November 11, 1992, Miller approached Smith's cell with a can of Mace pointed at Smith. The other inmates yelled at Miller not to use the Mace, and Miller did not. Smith offered no resistance and allowed himself to be handcuffed. The officers opened Smith's cell door, grabbed him by the collar, and pulled him to the edge of the gallery. The gallery is a walkway four or five feet wide. It has a waist-high railing consisting of two horizontal bars. The distance to the next gallery below is 8 or 10 feet. As Smith was pulled toward the edge of the gallery, he yelled that the officers were trying to throw him over the railing and he yelled for help. Smith was pressed against the railing, and it was the only thing preventing him from falling off the gallery. Smith was bent over the railing, and he tried to wrap his leg around the railing. At that point, Maxwell threw hot water, which he had already boiled for his coffee, on the officers. Maxwell threw the water on the officers in defense of Smith because Maxwell thought the officers were planning to push Smith over the railing.

Outside the presence of the jury, the trial court informed Maxwell that he could inform the jury of his prior felony convictions to lessen the impact of the convictions. The trial court told Maxwell that if he did not inform the jury of his prior convictions, the State would be allowed to inform the jury of the convictions in rebuttal. After receiving this information, Maxwell decided to testify to his prior convictions. The court reopened testimony and allowed Maxwell to reveal

to the jury that he had prior convictions for murder, two armed robberies, and attempt (armed robbery). The State also impeached Maxwell's two witnesses with their prior convictions for murder.

■ On appeal, Maxwell first argues the trial court erred in not scheduling a hearing before another judge on his motion for substitution of the trial judge for cause. Section 114—5(d) of the Code of Criminal Procedure of 1963 provides:

> "In addition to the provisions of subsections (a), (b) and (c) of this Section the State or any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge not named in the motion; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes. If the motion is allowed, the case shall be assigned to a judge not named in the motion. If the motion is denied the case shall be assigned back to the judge named in the motion." (725 ILCS 5/114—5(d) (West 1992).)

The Supreme Court of Illinois has repeatedly stated that a motion for substitution of judge, due to the alleged prejudice of the assigned judge, must be made at the earliest practical moment after any potential prejudice is discovered. The rule is designed to prevent the defendant from first determining the attitude of the trial judge in a hearing related to some of the issues and then asserting the prejudice of the court if the court's rulings are not consistent with the defendant's theory. (*People v. Taylor* (1984), 101 Ill. 2d 508, 518, 463 N.E.2d 705, 710.) When a court has held a hearing and by its rulings indicated its views on the merits of the case, it is too late for the party against whom such rulings have been made to move for a substitution of judge. *People v. Chambers* (1956), 9 Ill. 2d 83, 89, 136 N.E.2d 812, 815.

■ The present case involves a situation which the rule meant to remedy. Maxwell filed his motion for substitution of judge after the trial started and after the trial judge had ruled on his numerous motions. Since Maxwell's motion for substitution of judge came after the trial court ruled on substantive issues involved in the trial, the motion was not timely. Therefore, no error occurred when the trial court denied Maxwell's motion and did not schedule a hearing before a different judge on the motion.

Second, Maxwell argues the trial court erred by allowing the State to impeach him and other defense witnesses with prior felony convictions. Maxwell's two witnesses were impeached by their prior murder convictions. Although Maxwell revealed his convictions to the jury, he did so only after the trial court stated it would allow the

State to use his convictions for impeachment purposes if Maxwell did not reveal his convictions. In light of Maxwell's *pro se* status and the trial court's "advice" to Maxwell, we will consider Maxwell to have been impeached by the State.

■ The State concedes in its brief that the convictions were improperly admitted for impeachment purposes in light of *People v. Williams* (1994), 161 Ill. 2d 1, 641 N.E.2d 296, but it argues the errors were harmless. We think the State makes its concession too readily. In *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698, the supreme court adopted the proposed Federal Rule 609 for impeachment by evidence of conviction of a crime. That rule allowed impeachment of a witness' credibility by a prior conviction if (1) the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or (2) the crime involved dishonesty or false statement regardless of the punishment; unless (3) in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

In *Williams*, the supreme court revisited the rule stated in *Montgomery*. The supreme court determined the lower courts were mechanically applying the *Montgomery* rule to permit impeachment of a testifying defendant with virtually all types of prior felony convictions. The court was concerned with the lack of emphasis lower courts have placed on the third prong of the *Montgomery* rule (probative value versus unfair prejudice). The court emphasized the importance of conducting the balancing test of probative value versus prejudicial effect before admitting prior convictions for impeachment purposes. *Williams*, 161 Ill. 2d at 38-41, 641 N.E.2d at 311-13.

There is, arguably, *dicta* in *Williams* which indicates that something more than the fact that a conviction is a felony is required under the first prong of the *Montgomery* rule. Such an interpretation of *Williams* would place the appellate court and the trial courts of this State in a quandary when a testifying defendant is impeached by a prior felony conviction. If a prior felony conviction must affect the defendant's credibility in a manner other than by showing a disrespect for societal order, then there would seem to be no distinction between the first two components of the *Montgomery* rule. (See *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698 (first component— the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; second component—the crime involved dishonesty or false statement regardless of the punishment).) Under what appears to be the *Williams* analysis, it is difficult to see how there could be a prior felony convic-

tion which affects the credibility of the witness (other than by showing a disrespect for societal order) but does not fall within the second component of the *Montgomery* rule.

From our examination of *Williams*, we conclude the Supreme Court of Illinois was not abandoning the well-settled interpretation given *Montgomery*, which provides in the first prong that all felonies may be used for impeachment, and in the second prong allows non-felonies to be used for impeachment if they relate to truth or veracity. Both the first and second prongs are subject to the third prong, which provides for a determination that the impeaching offense has a probative value not substantially outweighed by its prejudicial effect. The *Williams* opinion expresses concern about lower courts applying *Montgomery* in such a way as to allow all previous felony convictions for impeachment, negating the importance of the third prong. *Williams*, in effect, warns of the importance of conducting the balancing test.

In *Williams*, the impeaching offense also had the effect of proving the offense then before the trial court. This, the court recognized, had the necessary prejudicial significance. (We note the difference between *Williams* and our court's opinion in *People v. Hester* (1995), 271 Ill. App. 3d 954, where the prosecution correctly introduced a prior like-kind offense for purposes of proving the new offense but also had the result of impeachment.) *Williams* also warns that close attention should be given to whether prior felonies actually have the ability to impeach veracity—and this should be done when determining whether the probative value is outweighed by the prejudicial effect.

■ In the present case, the trial court did not err in allowing the impeachment of defendant by the prior conviction. The jury was well aware that defendant was a prison inmate. The current offense necessarily involved defendant's prison status. The disclosure of the prior offense removed that issue from the jurors' speculation. The disclosure prejudice was substantially reduced because of the information already before the jury. The prior conviction was initially admissible under the first prong of *Montgomery*. When the third prong was considered, the trial court could properly determine the impeachment probative value was not outweighed by the prejudicial effect.

The same reasoning applied to defendant applies to the impeachment of convicts testifying for the defense. Defendant complains that impeachment was not necessary because his witnesses testified on direct examination that they were residents of the condemned unit at Pontiac. We do not find that information equivalent to the actual

offense. The prior offenses were murder convictions and are admissible under the first prong. The trial court's decision was within its discretionary authority. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.