THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC BRAMLETT, Defendant-Appellant.

Fourth District    No. 4—94—0149

Opinion filed November 30, 1995.

STEIGMANN, J., specially concurring.

Daniel D. Yuhas and Donald J. Casper, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant appeals from his conviction and sentence for armed violence (720 ILCS 5/33A—2 (West 1992)) alleging (1) the trial court erred in denying a continuance to secure the presence of an alibi witness; (2) he is entitled to a new trial based on the prosecutor's reference to the absence of defendant's alibi witnesses; and (3) the court abused its discretion in allowing impeachment of defendant with his prior convictions.

Following return of the information, the defendant filed an answer to the State's pretrial discovery order on October 20, 1993, indicating he would rely on an alibi defense and might call William Matthews and Randy Hines to testify as to his whereabouts at the time of the offense. On November 12, 1993, defendant issued a subpoena for William Matthews which had not been served by the time of trial on November 22, 1993, because Matthews could not be found. On that date, defendant filed a motion for a continuance, indicating Matthews had an outstanding arrest warrant on unrelated charges and he believed Matthews would be apprehended by the time the case was again set for trial. Defendant's counsel stated that he had interviewed Matthews, who would testify that "the defendant was at [home] rather than at the scene of this shooting." The prosecutor stated that when Matthews had been identified as an alibi witness in October, the Decatur police had unsuccessfully attempted to locate him for an interview and there was no indication he would ever be available as a witness. The court denied the motion and the trial commenced.

At trial, William Broadnax, the owner of Mr. B's liquor store, testified that shortly before midnight on July 23, 1993, defendant came to his store and they got into an argument regarding employment. Broadnax had known the defendant since defendant was a child due to Broadnax' relationships with defendant's aunt and father. As defendant left the premises he threatened Broadnax that he was going to "get something to blow the damned place up." Broadnax called the Decatur police but when an investigator arrived, defendant could not be located and the officer left.

Broadnax testified that while he was totalling up the receipts, sometime before 2 a.m. on July 24, he heard a gunshot and looked out the drive-up window into the well-lit parking lot. He saw defendant with a long gun in his hands straddling the fence separating the parking lot from the adjacent residential area. He then saw defendant fire a second shot at the passenger side of Broadnax' red pickup truck, which was parked in the lot immediately across from the drive-up window. Defendant then climbed off the fence and fled. When

Broadnax inspected his truck, he found two gunshot holes in the door and window.

Randy Hines, who admitted a conviction for attempt (burglary) in 1987, testified on behalf of the defendant. He stated that in the early morning hours of July 24 he was visiting at defendant's house, which was just around the corner from Mr. B's. Shortly before 2 a.m., Hines drove to Mr. B's to purchase liquor. As he left the store's parking lot through the alley, he heard a shot and ducked down. After hearing a second shot, he looked and saw a lot of people lying on the ground in the parking lot, but he did not see the defendant. He returned to the defendant's residence and defendant was there.

The defendant testified that he had gotten into an argument with Broadnax at Mr. B's shortly after midnight on July 24, after which he returned to his home. He denied making any threats or ever returning to Mr. B's later that morning. He stated Mr. B's was less than a three-minute walk from his home, where he had been drinking and playing cards with friends. On direct examination, he identified those friends as "Allen," "Maurice," Randy Hayes and Hines. On cross-examination, he stated those present included Randy Hayes, "Maurice or Torice," "Clarence," and his stepfather, William Matthews.

At the instruction conference following the close of the State's case, the prosecutor indicated that he intended to impeach defendant with evidence of his prior convictions for aggravated battery and unlawful restraint should he testify. Defendant's counsel objected, stating that neither conviction impacted defendant's veracity and both were unduly prejudicial. Without analysis, the court held the prior convictions would be admitted and, following the close of both the State's and defendant's case, the judge informed the jury as to the nature of both convictions.

Defendant first argues the trial court erred in denying his request for a continuance to secure the presence of Matthews as an alibi witness since he was diligent in attempting to secure his presence by issuing a subpoena as soon as the trial date was set and by disclosing Matthews' identity in sufficient time to secure his statement. The State points out that the Decatur police had unsuccessfully attempted to locate Matthews since October and, due to the outstanding arrest warrant, there was no indication Matthews would ever be available as a witness. Moreover, he still had not been located by the time of the hearing on post-trial motions, six weeks after trial. The State also notes that the offer of proof on Matthews' anticipated testimony failed to indicate whether Matthews was personally present with defendant at the time of the shooting and so lacks materiality for af-

fording an alibi defense. During his trial testimony, defendant stated he had been at his home with four additional persons at the time of the shooting, any one of whom might have testified to the same purported defensive matters. See *People v. Ladas* (1957), 12 Ill. 2d 290, 296, 146 N.E.2d 57, 60.

■ The denial of a request for a continuance sought to secure the presence of a witness should be reviewed under the following factors: (1) whether defendant was diligent in attempting to secure the witness for trial; (2) whether defendant shows that the testimony was material and might affect the jury's verdict; and (3) whether the failure to grant the continuance would prejudice the defendant. (*People v. Ward* (1992), 154 Ill. 2d 272, 307, 609 N.E.2d 252, 266.) The granting or denial of such a motion lies in the sound discretion of the trial court. (*People v. Cobb* (1983), 97 Ill. 2d 465, 477, 455 N.E.2d 31, 36.) The denial of a motion for continuance is not an abuse of discretion where there is no reasonable expectation that the witness will be available in the foreseeable future. *People v. Watts* (1990), 195 Ill. App. 3d 899, 917, 552 N.E.2d 1048, 1060 (defendant given five days to locate a witness before trial and the court denied a continuance where there were clear indications she was unwilling to testify and had purposely absented herself from the jurisdiction).

■ A reviewing court can sustain the decision of the trial court on any grounds called for by the record, regardless of whether the circuit court relied on those grounds. (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384, 389.) The facts support the trial court's denial of defendant's motion for a continuance. Matthews had not been apprehended from October through the post-trial hearing in late December 1993. Defendant did not subpoena any other of the witnesses who purportedly could have testified to defendant's whereabouts at the time of the offense nor did he provide the State access to them by revealing their full names or addresses. The trial court did not abuse its discretion in denying the motion.

■ Defendant next argues he is entitled to a new trial because the prosecutor referred to the absence of his alibi witnesses. The State contends the issue is waived because defendant failed to object to the prosecutor's sole reference to the "long list" of alibi witnesses disclosed for the first time during defendant's direct testimony, and to the prosecutor's closing argument referring to that list of witnesses followed by the oblique statement "Well, what happened?" We agree with the State that the issue may be deemed waived (see *People v. Cloutier* (1993), 156 Ill. 2d 483, 507, 622 N.E.2d 774, 786); however, we find the statements did not constitute error.

While it is improper for the State to comment unfavorably on the

defendant's failure to produce a witness equally accessible to the State, where the witness has material alibi evidence more accessible to the defendant the State may properly comment on defendant's failure to call him. *People v. Melton* (1992), 232 Ill. App. 3d 858, 861, 596 N.E.2d 1246, 1249; see *People v. Blakes* (1976), 63 Ill. 2d 354, 358-60, 348 N.E.2d 170, 173-74 (it was not error for the prosecutor to cross-examine the defendant on the identity of patrons at a club where he professed to be at the time of the offense or to comment that the persons identified had not been called to testify).

Here, the prosecutor never directly referred to the absence of Matthews (a witness potentially inaccessible to both parties) but merely to the "long list" of alibi witnesses defendant had referred to in his direct testimony. Since defendant referred to those witnesses by their first names only and disclosed neither an identifying address nor phone number, it must be presumed they were accessible only to him (see *Melton*, 232 Ill. App. 3d at 861, 596 N.E.2d at 1249), and the prosecutor's questions and comments did not constitute error.

Defendant last contends the trial court improperly allowed impeachment of his testimony by the introduction of his prior convictions for aggravated battery and unlawful restraint, because both are violence-related crimes, rather than crimes impacting his veracity, and their admission increased the likelihood the jury viewed the convictions as evidence of a propensity to commit crimes. Defendant contends such indiscriminate admission has been disapproved in *People v. Williams* (1994), 161 Ill. 2d 1, 641 N.E.2d 296 (prior conviction for voluntary manslaughter erroneously admitted at defendant's trial for murder).

As an initial matter, the State contends the issue is waived for defendant's failure to preserve it in his post-trial motion. (See *Cloutier*, 156 Ill. 2d at 507, 622 N.E.2d at 786.) However, due to the potential for unfairness, we elect to review the matter under the plain error doctrine pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the supreme court repudiated the then-prevailing practice which obligated the trial judge to admit evidence of all prior convictions for impeachment purposes, concluding instead that admission was discretionary if (1) the crime is punishable by death or imprisonment in excess of one year (a felony), or (2) the crime involved dishonesty or false statement regardless of the punishment, unless (3) in either case the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. (*Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.) In *Williams*,

the supreme court revisited the *Montgomery* rule in light of subsequent case law, criticizing an apparent "regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant" (*Williams*, 161 Ill. 2d at 38-39, 641 N.E.2d at 311-12) and often summarily justified by the "rationale that a felony of any type evinces a disrespect for societal order and thus adversely affects the defendant's veracity" (*Williams*, 161 Ill. 2d at 39, 641 N.E.2d at 312). The *Williams* decision decried the "mechanical application" of this premise, emphasizing that the *Montgomery* focus was on crimes impacting the defendant's testimonial credibility.

While *dicta* in *Williams* suggests that prior felonies unrelated to veracity must be relevant for some proper purpose other than impeachment, the court nevertheless reaffirmed the *Montgomery* principles (pursuant to which the first prong permits the use of any prior felony conviction for impeachment purposes), as the law to be applied in this State. (*Williams*, 161 Ill. 2d at 41, 641 N.E.2d at 313.) Since the genesis of the *Montgomery* rule arose in the context of *impeachment* evidence (see 725 ILCS 125/6 (West 1992); *Williams*, 161 Ill. 2d at 36, 641 N.E.2d at 310), it is unclear from the *Williams* analysis what other "proper purpose" there could be. While prior offenses are independently admissible where relevant for some purpose other than to show the defendant's propensity to commit crime, such as to prove *modus operandi*, criminal intent, identity, motive, or absence of mistake (see *People v. Illgen* (1991), 145 Ill. 2d 353, 364-65, 583 N.E.2d 515, 519), they may be admitted as *substantive* evidence.

We adhere to our previous interpretation of *Williams* expressed in *People v. Maxwell* (1995), 272 Ill. App. 3d 57, 62, 650 N.E.2d 298, 301, wherein we concluded the *Williams* court was expressing concern about the indiscriminate admission of all prior felonies for impeachment purposes absent application of the critical balancing test mandated by *Montgomery*. Here, since there is no evidence of record that the trial court weighed the probative value of the defendant's prior convictions against their prejudicial effect, it erred in admitting them as evidence for purposes of impeaching the defendant's credibility.

Nevertheless, even though we conclude admission of defendant's prior convictions was error, in light of the overwhelming evidence of defendant's guilt, we find the error was harmless. The defendant was well-known by the victim, who observed him in a brightly lit area and saw him fire the second shot into the victim's truck. Less than two hours prior to the incident, defendant had come to the victim's liquor store and threatened to blow the place up. Defendant's witness

failed to provide an alibi, since he stated only that he did not see defendant at the liquor store after the shots were fired and that defendant was at his residence, located a half block from the scene of the offense, when the witness returned.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

KNECHT, P.J., concurs.

JUSTICE STEIGMANN, specially concurring:

I agree with the decision to affirm but write separately on the issue of defendant's impeachment by his prior convictions for three reasons: (1) defendant waived this issue, and the admission of defendant's prior convictions for impeachment does not constitute plain error; (2) the trial court could have—and should have—avoided the error the majority found by handling defendant's prior convictions differently, and more appropriately; and (3) I disagree with the majority's reading of *Williams* and reject defendant's argument on the merits.

## I. NO PLAIN ERROR

This court should take the supreme court at its word: plain error exists only in exceptional circumstances in which a true injustice may have resulted, or as recently stated, when " 'the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial.' " (*People v. Robinson* (1995), 167 Ill. 2d 53, 67, quoting *People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 461, 471.) Plain error is not a "catchall" to be used—as defense counsel increasingly use it on appeal—for any claim of error that counsel can possibly find when combing the record. Nor should this court find plain error, as the majority does, merely "due to the potential for unfairness" (276 Ill. App. 3d at 206). See *Robinson*, 167 Ill. 2d at 67.

## II. THE "MERE FACT" APPROACH TO IMPEACHMENT BY PRIOR CONVICTION

The trial court could have avoided any error. Almost six years ago, the specially concurring opinion in *People v. Kunze* (1990), 193 Ill. App. 3d 708, 728-36, 550 N.E.2d 284, 297-303 (Steigmann, J., specially concurring), described, in detail, a procedure that trial courts, in their discretion, could use for handling prior convictions for impeachment purposes that would inform the jury only of the "mere fact" that the defendant was a convicted felon, not of the

specific offense of which he was convicted. (*Kunze*, 193 Ill. App. 3d at 736, 550 N.E.2d at 303 (Steigmann, J., specially concurring); see also *People v. Taber* (1995), 271 Ill. App. 3d 576, 580, 648 N.E.2d 342, 344-45 (wherein a panel of this court directed the "mere fact" approach be used on retrial).) Trial courts have increasingly used the "mere fact" method of impeachment and *no* court of review has ever found error when a trial court has done so.

Regrettably, the trial court here did not use the "mere fact" method, instead permitting the jury to learn that defendant, charged with armed violence, had previously been convicted of two other crimes of violence, aggravated battery and unlawful restraint. By doing so, the trial court maximized the potential prejudice to defendant.

The "mere fact" method is not inconsistent with the concerns expressed in *Williams* about the need for trial courts to engage in the *Montgomery* balancing test. As stated in the special concurrence in *Kunze*, the "mere fact" method should be utilized only when the trial court has already determined such evidence is admissible under *Montgomery*. *Kunze*, 193 Ill. App. 3d at 731, 550 N.E.2d at 299 (Steigmann, J., specially concurring).

## III. POST-*WILLIAMS* IMPEACHMENT OF TESTIFYING DEFENDANTS

### A. *Williams*: Analysis in Context

In *Williams*, the supreme court criticized the indiscriminate admission of prior felonies for impeachment purposes. The precedential scope of a decision is, of course, limited to the facts before the court. (*People v. Flatt* (1980), 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515.) Bearing this precept in mind, I note the argument the supreme court faced in *Williams*:

> "Defendant asserts that, in violation of the rule announced in [*Montgomery*], the trial court [(1)] not only failed to weigh the prejudicial effect against the probative value of the evidence but, [(2)] in fact, admitted it for the very purpose that prior convictions may not be admitted, *i.e.*, to show defendant's propensity for violent criminal behavior." *Williams*, 161 Ill. 2d at 33-34, 641 N.E.2d at 309.

The court reviewed the origin and rationale of the *Montgomery* rule, disapproved its increasingly mechanical application, and then in the case before it (a direct appeal in a death case), noted the trial court's remarks: " 'it's of great probative value in a case of this nature,' " and " 'it[']s highly probative of the nature of the offense' " (*Williams*, 161 Ill. 2d at 40, 641 N.E.2d at 312). These remarks re-

vealed that the trial court admitted defendant's 1983 voluntary manslaughter conviction *for an improper purpose*, namely, as relevant to defendant's *guilt* of the 1987 murder for which he was on trial, rather than his *credibility*. (*Williams*, 161 Ill. 2d at 40-41, 641 N.E.2d at 312-13.) However, although the court found error, it did not reverse because evidence of defendant's guilt was so overwhelming that admission of the prior conviction could not have been a material factor in the verdict.

## B. *Montgomery Balancing: What's a Court To Do After Williams?*

The court's language and approach in *Williams* have become the subject of disagreement between panels and districts of the appellate court. In *People v. Fomond* (1995), 273 Ill. App. 3d 1053, 1068, 652 N.E.2d 1322, 1332, a first district panel construed *Williams* narrowly, "as holding that a judge may not admit past felonies for the purpose of showing a defendant's propensity to commit a crime." In *People v. Elliot* (1995), 274 Ill. App. 3d 901, 909-10, 654 N.E.2d 636, 646-47, Justice Wolfson outlines the split of authority, including the third district (*Housh v. Bowers* (1995), 271 Ill. App. 3d 1004, 1006-08, 649 N.E.2d 505, 506-07 (reversible error in denying motion *in limine* and permitting use of prior drug conviction against personal injury plaintiff)). The *Elliot* court read *Williams* much more expansively than did the *Fomond* panel, stating *Williams* established at least three requirements, with the first being the following:

> "First, the prior conviction must bear on the defendant's truthfulness as a witness. Crimes involving deceit, fraud, cheating, or stealing press heavily on the probative value side of the scale. Crimes of violence, on the other hand, ' "generally have little or no direct bearing on honesty and veracity." ' (*Williams*, 161 Ill. 2d at 37, quoting *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, 940.) *That is, if the trial court determines the prior conviction is a pure act of violence, and has no element of dishonest conduct, it should not be placed on the scale at all*." (Emphasis added.) *Elliot*, 274 Ill. App. 3d at 908-09, 654 N.E.2d at 642.

In *Maxwell*, this court read *Williams* far differently than the *Elliot* court, stating:

> "From our examination of *Williams*, we conclude the Supreme Court of Illinois was not abandoning the well-settled interpretation given *Montgomery*, which provides in the first prong that all felonies may be used for impeachment, and in the second prong allows nonfelonies to be used for impeachment if they relate to truth or veracity. Both the first and second prongs are subject to the third prong, which provides for a determination that the impeaching offense has a probative value not substantially outweighed by its prejudicial effect. ***

\*\*\* *Williams* also warns that close attention should be given to whether prior felonies actually have the ability to impeach veracity—and *this should be done when determining whether the probative value is outweighed by the prejudicial effect.*" (Emphasis added.) *Maxwell*, 272 Ill. App. 3d at 62, 650 N.E.2d at 301-02.

As this discussion demonstrates, uncertainty abounds in the appellate and trial courts regarding the message of *Williams*. Because this issue of impeachment by prior conviction arises in a large percentage of all felony trials, clarification of *Williams* is needed on two distinct points.

## 1. Is the First Prong of *Montgomery* Still Valid?

In the 24 years since *Montgomery*, trial courts have permitted impeachment by prior conviction in *thousands* of cases when those convictions did *not* directly reflect the defendant's "dishonesty or false statement"—the "second prong" of *Montgomery*—as would, for example, convictions for perjury and deceptive practices. Note that *Montgomery* identified two *separate* bases—or "prongs"—for possible admission of a prior conviction to impeach a testifying defendant: (1) the crime was punishable by death or imprisonment in excess of one year, *or* (2) the crime involved dishonesty or false statement regardless of the punishment. (*Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.) Did the supreme court in *Williams really mean* to render all "first prong" prior convictions—such as for felony drug offenses and crimes of violence—henceforth unusable *per se* to impeach a testifying defendant? Such a ruling would be a dramatic change in Illinois law, and surely the supreme court would state it emphatically and clearly. *Williams* did not do so.

At issue in *Williams* was the use of the defendant's conviction for voluntary manslaughter at his trial for first degree murder. Although the supreme court held that "[u]nder the rationale of *Montgomery*, evidence of defendant's conviction of voluntary manslaughter should not have been admitted at trial," the court also stated: "We do not hold that there are no circumstances under which a voluntary manslaughter conviction may be admitted at a murder trial." *Williams*, 161 Ill. 2d at 41, 641 N.E.2d at 313.

In context, the supreme court *seems* to be saying there are some circumstances under which a voluntary manslaughter conviction may be admitted at a murder trial *to impeach the testifying defendant*. If the court was considering some context other than *Montgomery* for admitting a defendant's voluntary manslaughter conviction at his murder trial (and I can think of none), then the placement of that sentence in the middle of a *Montgomery* discussion is peculiar. On

the other hand, if the court was speaking in a *Montgomery* context and specifically rejecting the argument that there are no circumstances under which a voluntary manslaughter conviction may be admitted at a murder trial to impeach defendant, that observation appears inconsistent with everything the court said previously in its analysis of *Montgomery*. In other words, if trial courts should focus solely upon felony convictions involving "dishonesty or false statement" because only such second-prong convictions "bear upon the defendant's truthfulness as a witness" (*Williams*, 161 Ill. 2d at 39, 641 N.E.2d at 312), then how could a voluntary manslaughter conviction possibly be either?

## 2. What Is the Rationale for Permitting Impeachment of a Defendant by Prior Conviction?

The *Williams* court also seems to disapprove of the rationale that felony convictions evince a disrespect for societal order and thus adversely affect the defendant's veracity. In *People v. Medreno* (1981), 99 Ill. App. 3d 449, 453, 425 N.E.2d 588, 591, then-appellate Justice Heiple specifically rejected a first district decision (*People v. Siebert* (1979), 72 Ill. App. 3d 895, 390 N.E.2d 1322) that required a prior conviction, even for a felony offense, to bear a direct relationship to the honesty of the witness (the "second prong" of the *Montgomery* criteria). The *Medreno* court cited approvingly a decision of this court which held that a defendant's prior rape conviction was probative of his likelihood to commit perjury because a serious felony conviction "evinces a disrespect for societal order and thus adversely affects his veracity." *Medreno*, 99 Ill. App. 3d at 452, 425 N.E.2d at 591, citing *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.

The rationale for impeachment by prior conviction was also discussed in the concurring opinion in *Kunze*:

> "Another way of looking at this issue is to view it as one of expectations. A jury may reasonably expect that a person who takes the witness stand and is sworn to tell the truth will feel moral and societal pressures to do so. Telling a jury that a witness has a prior felony conviction informs the jury that on some occasion in the past, this witness has seriously violated societal (and probably moral) rules, thereby permitting the jury to infer, if it so chooses, that this witness may feel fewer moral and societal pressures to tell the truth than would be felt by a witness who has no prior felony conviction. If the jurors draw this inference, they may use it along with all the other evidence in the case as they evaluate the credibility of that witness. In sum, a convicted felon *may be* less worthy of belief *solely* because of that felony conviction than a witness who is not a convicted felon." (Emphasis in

original.) (*Kunze*, 193 Ill. App. 3d at 735, 550 N.E.2d at 302 (Steigmann, J., specially concurring).)

(See also *People v. Armstrong* (1995), 275 Ill. App. 3d 503, 507, 655 N.E.2d 1203, 1206.) The *Kunze* special concurrence also quoted from *Campbell v. Greer* (7th Cir. 1987), 831 F.2d 700, 707, in which the Seventh Circuit discussed the rationale underlying impeachment by prior conviction:

> "Rule 609 and the common law tradition out of which it evolved rest on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying. If so, this is something a jury should be permitted to take into account in evaluating a witness's believability."

If the supreme court were to reject a principle of law—namely, the mere *possibility* that a defendant's prior "first prong" felony conviction could be used to impeach him if he testifies at trial—which has for decades been part of the fabric of this State's law, then again not only would it do so clearly and explicitly, but surely it would provide an explanation for why it repudiates the "common law tradition" and the "common-sense proposition" (in the Seventh Circuit's words) upon which this long-standing legal doctrine rests.

### C. *Application of Montgomery to the Present Case*

Defense counsel suggested at the instruction conference that the court and counsel go through the *Montgomery* process. The prosecutor then advised the court of defendant's prior convictions and that he would tender authenticated copies of his convictions. Defense counsel argued that the offenses did not involve veracity, truth, or moral turpitude and asked the court to exclude both convictions, but if they were found admissible, to advise the jury of only one. In response, the prosecutor argued that the probative value was not so outweighed by the danger of unfair prejudice and asked that both convictions be admitted. The court ruled that if defendant testified, the exhibits would be admitted.

The crux of this case was the credibility of the complaining witness versus that of defendant and his alibi witness, another convicted felon. In closing argument, the prosecutor emphasized these prior convictions as important factors to use when the jury assessed the believability of the witnesses.

A trial judge's remarks should be taken in context, including the

context of the arguments of counsel. (*People v. Ward* (1986), 113 Ill. 2d 516, 526-27, 499 N.E.2d 422, 425-26.) We generally do not assume the trial judge failed to engage in the proper analysis simply from a lack of his recitation of particular words. In fact, the supreme court rejected an argument that the trial court did not perform the requisite balancing test where counsel argued it and the trial court merely said it understood the appropriate test and ruled that all the convictions could be introduced. *People v. McKibbins* (1983), 96 Ill. 2d 176, 188, 449 N.E.2d 821, 826.

Here, the *Montgomery* balancing test was invoked and no one suggests the trial court expressly stated the prior convictions would be admitted for any legally improper reason. Thus, the record shows no error. The prosecutor's argument that defendant's prior convictions affected his believability came within the scope of permissible argument. Further, the prosecutor said not one word about the nature of the convictions of defendant and his alibi witness, focusing *solely* on their effect on the witnesses' believability relative to that of the victim. We also note that the court correctly instructed the jury with Illinois Pattern Jury Instructions, Criminal, Nos. 3.12 (impeachment of a witness by a prior conviction) and 3.13 (impeach of a defendant by previous convictions) (3d ed. 1992).

Reviewing courts ought not presume error by the trial court from a lack of "magic words." *Williams* does not require a contrary result; nor does it mean that the State cannot impeach a testifying defendant with prior felony convictions other than those going directly to truth and veracity.